Exhibit "J"

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

## PAYROLL COORDINATOR

## JOB DESCRIPTION AND RESPONSIBILITES

- In charge of processing weekly payrolls and filing of related payroll taxes and reports
- Calculates timecards and timesheets for all company payrolls
- Records attendance for employees
- Inputs all computed hours and payroll data to ADP for processing of checks and reports. Distributes checks.
- Maintains payroll journals for company indicating weekly, bi-weekly and monthly costs by department.
- Files and reconciles yearend payroll taxes including W2's for all companies
- Monthly downloads 401K, extract reports from ADP, and imports information into Excel spreadsheet. Reviews data and makes modifications to information to prepare for Plan Manager (our 401k Program) input.
- Runs reports from Plan Manager for review and use for the purpose of remitting payments to our 401k Plan.
- Prepares monthly bank reconciliation's for payroll accounts, Union reports and issues payments for filing to Union Local 1102
- Quarterly calculates disability data by employee-information for the purpose of paying disability insurance and prepares billing for the reimbursement of Beauty Advisors expenses
- Files State unemployment claims, disability and workers compensation claims
- Assists with insurance and 401k enrollments and various payroll  matter
- Resolving payroll issues, providing information to the staff
- Works closely with HR and managers, processes new hires, status changes and terminations
- Performs other duties as determined by management but not limited to the above stated responsibilities

# Exhibit "K"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ARLEIGH SPENCER,

        Plaintiff,

    -against-

INTERNATIONAL SHOPPES, INC., and
MICHAEL HALPERN, personally and
as President of International Shoppes,

        Respondent.

-----------------------------------------------------X

AFFIDAVIT OF RICK DOMBROWSKI

Index No.: CV-06 2637

STATE OF NEW YORK    }
                         }SS:
COUNTY OF NASSAU    }

    I, Richard Dombrowski, being duly sworn, deposes and states under penalty of perjury:

1.    I am the former Chief Administrative Officer at International Shoppes, Inc. My employment with the firm ended on April 6, 2006.

2.    I was asked by Michael Halpern to contact ADP, International Shoppes, Inc.'s payroll service, to check if Arleigh Spencer had changed or deleted his requirements to pay back the loan he had received from International Shoppes, Inc.

3.    I personally made the telephone call and was told by ADP that Arleigh Spencer had not made any changes to his payroll deductions, or the loan amounts he owed.

4.    I informed Michael Halpern, Joanne Halpern Ed Morales and Annette Balau of this. I made it clear that the results of my investigation showed no wrongdoing by Mr. Spencer. Michael Halpern said that he did not care and that he wanted Spencer out of the company.

5. I have read the forgoing and know it to be true.

_____
Richard Dombrowski

Sworn before me this
11th day of July, 2006

_____
Notary Public

DAVID G. GABOR
Notary Public, State of New York
No. 02GA4925731
Qualified in Nassau County
Commission Expires March 7, 20 10

Exhibit "L"

April 16ᵗʰ 2004

To: Concetta Petrucci
    Human Resources Manager

From: Arleigh Spencer
      Payroll Coordinator

As you are aware, I am suspended with out pay. The explanation given to me was that I had stopped the required payroll deduction from my paycheck with out authorization. That information is not true. I had requested a change that was comfortable to me but my request was denied according to Mr. Morales.

I feel that the refusal to accommodate my request and the suspension was the product of race discrimination and the victim of retaliation for filing a meritorious complaint against Michael Halpern. I am requesting that this matter be investigated immediately and that my personnel file reflect no-wrong-doing on my part and be refunded my three days of lost pay.

The interest amount was only computed on April 12ᵗʰ and given to me for input. However, I was never given the opportunity to make that entry or make any change since I did not do the payroll. The question is where and how did the **misconduct** take place.

I look forward for your response.

Yours truly,

Arleigh Spencer

Cc file

Exhibit "M"

numerous occasions to have our differences resolved in house but it failed because of the nepotism within the company and all investigations were buried. Finally I decided on May 18th 2004 to make a formal complaint to the SDHR. On May 28th 2004 the employer trump-up a charge that I was instructed to distribute all payroll checks before 12 Noon and was abruptly terminated before starting to work on June 1st 2004. Upper management engineered this reason for my termination because the paychecks were dated and due the next day. I am troubled that officials at the NYS Unemployment Division who knew of this and are in receipt of my complaint to the state division of human rights is not even focusing on this as a possible reason for my termination. I have never disobeyed any directives that were given to me by management especially in the way that paychecks are to be distributed.

My twenty-three years relationship with my wife and children ages seventeen and eleven have been partially ruin by this unfair dismissal and also by the injustice of the NYS Unemployment division. I have not been able to support my family as accustomed for over 18 weeks and my life is shattered. My wife was forced to make ends meet on her own strength and it bothers me constantly. No one from upper management that was involved or responsible for the crime was ever punished. I am the only person that was severely punished for blowing the whistle. I am now convinced that without the presence of adequate legal representation, your whole life can be of no value or significance.

I believe that a thorough investigation is essential into this matter because this corruption can only take place with the knowledge and help from upper management. Please help me to get the justice that I deserve.


Yours truly,

Arleigh Spencer



**Arleigh Spencer**
**48 Carolyn Ave**
**Valley Stream, NY 11580**
**516-285-4016**

*January 3, 2005*

*To: Hillary Rodham Clinton*
*780 3rd Ave*
*New York, NY 10017*

*Chuck Schumer*
*757 3rd Ave*
*New York, NY 10017*

*Dear Senators,*

*I am a fifty-eight year old black male and I need your help in correcting an injustice that was leveled on me. I was the subject to a year and a half of intense harassment and racial discrimination that was subtle and sophisticated.*

*After four and three quarter years of loyal service, I was illegally terminated from my job and was denied unemployment insurance benefits because of willful false statements that were made by my former employer in order to discredit and disqualify me from collecting unemployment insurance benefits. I believe that sufficient evidence was presented before the ALJ that would justify that my termination was retaliatory for filing a formal complaint with the SDHR nine days earlier and not for just cause. Surprisingly, the administrative law judge accepted and ruled on testimony that was not relevant at all to my firing. Her decision was one sided and bias against me.*

*On August 7th 2002, I accidentally stumbled on fraud and immediately reported it to the President of the company. A phantom employee was being paid for over a year and a half for work that they did not performed. Upper management set this up to avoid paying overtime wages to a non African male employee who was only earning $6.50 per hour and working 67.5 hours per week. Not only is it a violation of a person's civil rights but it's also a violation of the Federal and State's labor law. This crime, took place in NYC at a NYS lottery booth that was operating under our management and is located in the Port Authority Bus Terminal.*

*Unfortunately after reporting this corruption, I was ostracized, singled out and harassed by upper management mainly the President whom I had reported this crime to. I tried on*

# Exhibit "N"

Subj:    **Complaint**
Date:    8/28/2003 10:07:07 AM Eastern Standard Time
From:    Strike084
To:      CAPetrucci1

To: Concetta Petrucci
    Human Resources Manager

From: Arleigh Spencer
      Payroll Coordinator

Date: August 24, 2003

Subject: Complaint

This letter is to request that you address my complaint of unfair treatment and discrimination directed towards me by Michael Halpern, which I strongly believe is based on my gender, age and race.

On August 12th, 2003 I spoke with Mr. Halpern about my request for a salary increment.  You had expressed to me that my job performance met and exceeded expectations.  I feel it is only right that good work should be acknowledged and rewarded through compensation.  Since your efforts to reward my good work with a salary increase was not favored by Mr. Halpern, I decided to meet with him personally.  When I addressed this matter with Mr. Halpern, he blatantly refused my request and asked me to leave his office.  As he gave me no reason for his refusal, I believe that Mr. Halpern is still holding me accountable for the irregularities that I discovered and immediately reported to him on August 7th of 2002.  As you know, Mr. Halpern had alleged that I had knowledge of and was withholding information regarding this incident.  Although he has apologized to me for his unwarranted accusation, his behavior and treatment towards me is very different from that with other associates.

I am concerned that our practices and policies are not implemented in an equitable manner.  The rules are different for certain associates, which is generally in their favor; however, when it applies to me there is inequity and unfairness.  For example, my sick/personal days were reduced from seven to five days based on the new policy, yet there are associates who were permitted to maintain seven sick/personal days.  Some associates received salary increases and there was no explanation or justification why I have not been considered for the same privilege.  I take great pride in my work and have always done quality work.  I am aware that only certain groups receive increased compensation and at a much faster rate as opposed to myself, regardless of the fact that my work adds value to the bottom line of the company.

Finally I am asking for my 10 days pay that was deducted from my salary unjustly where other employees with comparable duties remain unchanged

cc: file

# Exhibit "O"

Int'l Shoppes          3/5/2004    8:54    PAGE 2/7    RightFax

PRIVILEGED AND CONFIDENTIAL



September 5, 2003

2:10 P.M.

TALKING POINTS FOR MEETING WITH ARLEIGH SPENCER

1.    Introduction

- [Begin discussion by telling him that you are here to discuss the issues that he raised in his August 28, 2003 E-mail to you.]

- [Assure him that the Company treats employee complaints seriously]

- [State that no decisions will be made today about next steps, but you will get back to him as soon as the investigation is completed.]

- [Do not make any promises of confidentiality.]

- [Ask open ended questions – let Arleigh do most of the talking

- [Ask follow-up questions where necessary – learn Who? What? When? Where? And Why? when possible.]

2.    Unequal Treatment

- In your August 28 letter, you said that certain "practices and policies are not implemented in an equitable manner." What did you mean by that?

WHAT I MEAN BY THAT IS SOME EMPLOYEE'S GET RAISES, MORE SICK TIME THAN OTHERS  I FEEL THAT IS UNJUST. I'M NOT SAYING A PERSON SHOULD N BE GETTING $50-200 INCREASES.

- I WORK HARD, I DO A GOOD JOB, AND I CARE ABOUT DOING A GOOD JOB. WHEN INTERVIEWED CONNIE SAID THAT THERE IS POTENTIAL FOR GROWTH AND PROGRESS.  SOME POLICIES SHOULD BE IN PLACE.

- Which policies and practices were your referring to?  Please be specific.

  - WELL THERE IS NOT EMPLOYEE HANDBOOK; I FOLLOW THE RULES, NO DISCIPLINARY POLICY.

-

8

Int'l Shoppes          3/5/2004    8:54    PAGE 3/7    RightFax

- Sick policies: Explain why you believe the sick policy is implemented inequitably? [If he talks about what other employees are allowed to do, ask him how he knows this.] Salary increases: Explain why you believe the salary increases are unfair? [If he talks about what other employees are allowed to get, ask him how he knows this.]

- Is there any policy in place that guarantees a raise?

- OH, NO THERE ARE NO GUARANTEES FOR A RAISE. BUT I BELIEVE HARD WORK PAYS OFF, I DON'T UNDERSTAND WHY INCREMENTS ARE NOT GIVEN.

- Who implemented the policy unfairly?

- MY ATTORNEY ADVISED ME NOT TO ANSWER

- Did this happen more than once? My attorney advised me not to answer. When did it happen? NO Answer Give specific examples. NO ANSWER

- Are there any other examples? NO ANSWER  Have you told us about all the incidents?  NO ANSWER

- Have you complained about this to anyone? NO ANSWER To whom? NO ANSWER When? NO ANSWER

3.   Meeting with Michael re: Salary Increases

- Tell me about your August 12, 2003 meeting with Michael.

- You initiated the meeting?  YES

- And Michael agreed to meet with you?  YES

- How long was the meeting?  A MINUTE OR TWO

- To the best of your recollection, what was said during the meeting?

- I TOLD MICHAEL HALPERN THAT I AM NOT HERE TO FIGHT WITH YOU. I SAID I WORK HARD AND I THINK I DESERVE AND INCREASE. MICHAEL RESPONDED, " WHAT PART OF NO DON'T YOU UNDERSTAND.

Arleigh1
935911v1

9

Int'l Shoppes          3/5/2004   8:54   PAGE 4/7    RightFax

- How did the meeting end?  MICHAEL SAID "LEAVE MY OFFICE"

- Did Michael raise his voice?  YES

Would you characterize it as a "heated discussion."
MICHAEL WAS ABRUPT AND UNPROFESSIONAL, VERY BLATANT.  HEATED FOR MICHAEL, NOT ME.

- Why? NO IDEA. Did you raise your voice?  I HAVE AN ACCENT AND MY

  OCTAVE MAY HAVE GONE UP. Why do you believe that h s reaction was

  connected to what had happened in the past?

MICHAEL HAS BEEN TREATING ME POORLY SINCE HE UNJUSTLY ACCUSED ME OF WRONG DOINGS.
MICHAEL HALPERN HAS NOT SPOKEN TO ME APART FROM ASKING ME

  FOR THE PAYROLL RECORDS.

- Has Michael said anything since the meeting about the Ben Modi matter? NO Ben

  Modi was not discussed What did he say? NOTHING  When did he say it? NOT AT

  ALL Was this comment made in front of anyone? NO

4.    Race Discrimination

- Why do you believe you have been discriminated against on the basis of your race?

- I DON'T RECALL

- I WILL NOT ANSWER ANY MORE QUESTIONS REGARDING RACE ON THE

  ADVISE OF MY ATTORNEY

- Were there any particular statements made? What was the statement? When made?

  By whom?  Were there any witnesses to this event?  Any other statements?

- Were there any particular actions taken?  What action? When taken? By whom?

  Witnesses?

- Can you think of anything else to support your belief?

Arleigh
935911v1

10

Int'l Shoppes          3/5/2004    8:54    PAGE 5/7    RightFax

5.    Age Discrimination

Why do you believe you have been discriminated against on the basis of your age? I THINK THAT NO ONE ELSE HAS BEEN TREATED THIS WAY – (JOKINGLY) I'M A SENIOR CITIZEN ACTIONS SPEAK LOUDER THAN WORDS.

- Were there any particular statements made? NO COMMENT What was the statement? NO COMMENT When made? NO COMMENT By whom? NO COMMENT Were there any witnesses for this event? NO COMMENT

- Were there any particular actions taken? NO COMMENT What action? NO COMMENT When taken? NO COMMENT By whom? NO COMMENT Witnesses? NO COMMENT

- Can you think of anything else to support your belief? YES,

THE WAY I HAVE BEEN TREATED BY MICHAEL HALPERN. I HAVE NOT BEEN MISTREATED BY ANY OTHER OFFICER IN THIS COMPANY. THAT'S MY COMPLAINT. I DON'T WANT TO SAY ANYTHING ELSE, I DON'T WANT TO BE TRAPPED, AND WANT TO BE CAUTIOUS.

6.    Gender Discrimination

- Why do you believe you have been discriminated against on the basis of your gender? NO COMMENT

- Were there any particular statements made? NO COMMENT What was the statement? NO COMMENT When made? NO COMMENT By whom? NO COMMENT Were there any witnesses for this event? NO COMMENT

- If he claims Annette Balu received preferential treatment, ask him the details about this. How did she? NO COMMENT What did he observe directly? NO COMMENT How does he know she received preferential treatment? I am the one put on leave, for not making certain tax deductions, but I have a documented w4.

Arleight
935911v1

11

ANNETTE also did not take the proper withholdings from others when there was a W4 issued.

- DID IT HAPPEN ON MORE THAN ONE OCCASION? PAYROLL AND BONUSES ARE THERE OTHER POSSIBLE EXPLANATIONS? DOES not matter. WHY DOES HE BELIEVE IT WAS GENDER PREFERENCE? Again, I'm on the outside. Annnette is still working. Explore facts. Did she ever tell him not to do certain things because it violated company policy? NO   What was his response?

- Were there any particular actions taken? NO COMMENT   What action? NO COMMENT WHEN TAKEN? NO COMMENT By whom? NO COMMENT Witnesses?  NO COMMENT

- Can you think of anything else to support your belief? I DON'T RECALL

7.    Conclusion

- Arleigh, thank you for coming in today.  We may be calling you with a few follow-up questions in the next several days.

- Anything you would like to add before we close today's meeting?

THIS INVESTIGATION IS UNFAIR, ANNETTE DOES THE SAME THING. THIS SOMETHING THAT GOES ON. MICHAEL TOLD ME TO PAY WILL MESILAS A WEEKS PAY WHEN HE WAS ON DISABILITY. THIS IS INCONSISTENT AND UNEQUAL RULES.

I'M TIRED AND HUMILIATED. I HAVE A FAMILY AND THIS IS UPSETTING TO MY FAMILY AND ME. THIS IS LUDICROUS. I JUST WANT TO DO MY JOB, AND COME BACK TO WORK. I LIKE THE COMPANY AND THE PARTNERS. SOMETHING IS DRASTICALLY WRONG, AND IT IS A FRIVOLOUS INVESTIGATION.

- State that ISI's policy is not to retaliate against employees for bringing complaints to our attention.

- Tell him that if he thinks of anything else he would like to add to what he's discussed with you today, that he should call one of you to discuss.

I WILL NOT WAIT MUCH LONGER BEFORE I TAKE LEGAL ACTION.

*MEETING CONCLUDED*

Arleigh
93591[vl

13

Exhibit "O"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

ARLEIGH SPENCER,

                                                    Index No.: 06 CV 2637
                                                    (Seybert, J.)
                              Plaintiff,            (Orenstein, M.)

                                                    **DECLARATION OF**
                                                    **ARLEIGH SPENCER**

            -v -


INTERNATIONAL SHOPPES, INC. and
MICHAEL HALPERN, personally and as
 President of International Shoppes, Inc.

                              Defendants.

----------------------------------------------------------------------x

**ARLEIGH SPENCER, declares as follows:**

1. I am a 62 year-old African-American man and the above-named plaintiff in this action.


2. I began my over four (4) year employment tenure with International Shoppes, Inc. ('ISI') in September 1999.


3. In 1981, I pled guilty to a misdemeanor charge of petit larceny. I have never been convicted of embezzlement.


4. On July 28, 1995 I issued a check to John O'Rourke in connection with a real estate transaction. Mr. O'Rourke failed to cash that check. Nearly two (2) years later, Mr. O'Rourke contacted my attorney at the time and notified him that he had recently found the un-cashed, stale check misfiled in his office. Mr. O'Rourke had called the bank where the check was drawn and the bank informed him that I had closed the account. When I spoke to Mr. O'Rourke about the incident, he informed me that he believed I owed him interest on the sum of the check. I felt that I did not owe Mr. O'Rourke interest as a result of his admitted negligence in failing to cash the check. Mr. O'Rourke then initiated a suit against

1

me for the amount of the check plus interest. We confidentially settled out of court.

5. I applied for and was offered the position of Payroll Clerk at International Shoppes. There were no educational prerequisites for the position. I believe that I was chosen for the position based upon my significant experience in working in payroll departments prior to my employment at ISI.

6. During my employment at ISI, I was disciplined at total of five (5) times. Each instance of discipline was unwarranted, and the discipline only occurred at around the time of or after I blew the whistle on the "phantom employee" scheme at ISI. For the nearly three (3) year period before I blew the whistle, I received no significant discipline from ISI management. Below is a description of each instance of discipline:

    a. Around August 2002, I was sent a memo by Michael Halpern regarding my failure to increase the salary of Ed Morales. The memo alleged that I was "insubordinate" for failing to process the increase. Mr. Morales, my supervisor, gave me a direct order not to process the increase. I in no way was insubordinate. Mr. Morales notified Mr. Halpern by memo of the same.

    b. Around September 2002, I was sent a memo regarding the "phantom employee" incident. In the memo, Mr. Halpern accused me of "sanctioning" the fraudulent activity. At no time was I ever found to have participated in or have advance knowledge of the scheme. I received a different warning than Joe Mariasch and Gene Cohen, the two employees who were actually involved in the "phantom" employee scheme. Whereas Mr. Mariasch and Mr. Cohen received the same boilerplate memo entitled "Personnel Matters", the warning issued to me was different and entitled

2

"Disciplinary Notice." Mr. Halpern apologized to me following the issuance of this warning.

c. Around August 2003, I was suspended for 14 days after asking Mr. Halpern for an annual salary increase. During my employment at ISI this is the only time I ever asked for an increase in salary. I never "hounded" Mr. Halpern for a salary increase. In 2003, every other member of the payroll department received an annual salary increase and I did not. I believed that I had also earned an increase, especially after I had uncovered the "phantom employee" scheme at ISI.

d. Around December 2003, I was written up because Mr. Halpern saw me viewing my company 401k information while at work. I spent less than five (5) minutes viewing my balance and I feel a warning was unwarranted since nearly every employee does the same thing.

e. Around April 2004, I was suspended for three (3) days for alleged "payroll irregularities." Mr. Halpern and ISI alleged that I modified deductions to my paycheck. An investigation was conducted by Rick Dombrowski, who found that I in no way engaged in such activity. When Mr. Dombrowski relayed this information to Mr. Halpern, he stated that he did not care and wanted me out of the company.

7. During my employment at ISI, the company had no formal policy on when checks were to be issued. The paychecks were dated on Friday. Typically I would begin processing the checks on Thursday. The checks were then distributed once I had completed processing them. My instructions from Ed Morales were to distribute the checks "as soon as you are done processing them." This is the policy I adhered to.

3

8. During my employment with ISI, I was given loans by the company. This was a routine practice of ISI and the company issued similar loans to many employees. I believe the general terms of all the loans were similar.

9. During my employment at ISI, the company offered me the choice to opt out of the company's health insurance plan. The company offered me cash in an amount equal to the amount of the company's contribution toward the plan. I chose to opt out of the insurance coverage. I do not know which other employees also chose to opt out of insurance coverage.

10. After I emailed HR Manager, Concetta Petrucci, about my complaints a meeting was held between me, Ms. Petrucci and Mr. Greenbaum. I felt it inappropriate that Mr. Greenbaum conducted the investigation since I had made my complaint to Ms. Petrucci. Before the meeting, my attorney at that time advised me not to answer certain questions. I felt the investigation conducted by Mr. Greenbaum was unfair.

11. On May 28, 2004, I had a meeting with Ed Morales and Stephen Greenbaum. During this meeting, Mr. Greenbaum falsely accused me of withholding employee paychecks in violation of the law.

12. During my Department of Labor hearing before Administrative Law Judge Joyce P. McAlister, Judge McAlister consistently, and in contravention to the weight of credible evidence, sided with the position of ISI. Throughout the course of the entire proceeding, I felt as though the purpose of the hearing was to placate me rather than seek the truth. The hearing was completely one-sided, as Judge McAlister time and again relied upon ISI's version of the facts while my version was by and large ignored.

13. Following my termination, I authored a letter to Senators Hillary Clinton and Chuck Schumer. I never received a response from either senator's office regarding my correspondence.

4

14. During my employment at ISI I was discriminated against based upon my race and age. I was also retaliated against for both discovering and reporting the "phantom employee" scheme to Mr. Halpern and for filing a discrimination complaint with the Division of Human Rights. Up the latter half of 2002, when I discovered the "phantom employee" scam, I was not significantly disciplined by the company. I received pay raises ever full year of my employment up to that point. After I uncovered the "phantom employee" scam I did not receive another raise. I was disciplined along with the two (non-African American) employees responsible for the scam even though there was no evidence that I was involved whatsoever. Since that time, I was targeted by Mr. Halpern and have been disciplined without cause. This ultimately led to my termination in 2004. All I wanted was to continue my employment and be treated as an equal and valuable member of the company.

15. Now, following my termination, I am defending myself in a frivolous lawsuit brought by Mr. Halpern. Mr. Halpern has only brought this suit in retaliation for my complaints against him and the company. His only motive in this suit is to cause me financial loss and wreak havoc on my emotional well-being. Mr. Halpern's claims were dismissed by the trial court before being remanded by the Appellate Division. However, I am confident that this baseless lawsuit will ultimately be dismissed.

**Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed at Carle Place, New York on this \_\_\_\_ date of February 2009.**

_____

**ARLEIGH SPENCER**

5