UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ARLEIGH SPENCER,

                    Plaintiff,          <u>MEMORANDUM & ORDER</u>
                                        06-CV-2637(JS)(MLO)

        - against -

INTERNATIONAL SHOPPES, INC., and MICHAEL
HALPERN, personally and as President of
International Shoppes, Inc.,

                    Defendants.
----------------------------------------X
APPEARANCES:
For Plaintiff:      Michael J. Borrelli, Esq.
                    Borelli & Associates, P.C.
                    One Old Country Road, Suite 347
                    Carle Place, NY 11514

For Defendants:     Daniel C. Ritson, Esq.
                    Herten, Burstein, Sheridan, Cevasco,
                    Bottinelli, Litt & Harz, LLC
                    747 Third Avenue, 37th Floor
                    New York, NY 10007

SEYBERT, District Judge:

        Plaintiff Arleigh Spencer ("Spencer" or "Plaintiff")

commenced this action on May 26, 2006, against International

Shoppes, Inc. ("ISI") and Michael Halpern, personally and as

President of ISI ("Halpern") (collectively, the "Defendants").  In

the Amended Complaint dated April 23, 2007 ("Amended Complaint"),

Plaintiff alleges discriminatory and retaliatory treatment based on

his age and race under Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u> ("Title VII"), New York State

Executive Law § 296 <u>et</u> <u>seq.</u> ("NYHRL"), 42 U.S.C. § 1981 ("§ 1981"),

and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §

624 <u>et</u> <u>seq.</u> ("ADEA").  Pending before the Court is Defendants'

motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court GRANTS Defendants' motion for summary judgment in part and DENIES it in part.

BACKGROUND

I. <u>Facts</u>

The facts contained herein are taken from the pleadings, affidavits, depositions, and the parties' Local Rule 56.1 Statements and the exhibits thereto. Solely for the purpose of this motion, the facts are construed in the light most favorable to Plaintiff as the party opposing summary judgment, with any factual conflicts resolved in the Plaintiff's favor.

A. <u>Plaintiff's Employment At ISI</u>

Plaintiff, an African-American male, at the age of fifty-three, started work at ISI as the payroll clerk on September 27, 1999. (Defs.' R. 56.1 Stmt. ("Defs.' Stmt.") ¶¶ 1, 22.) Approximately two months later, Plaintiff advanced to the position of payroll coordinator. (Spencer Dep. 27-28.) Plaintiff was notified at his initial job interview at ISI that the company had no policy requiring annual raises. (Defs.' Stmt. ¶ 34.) Halpern was responsible for determining employees' wage increases at ISI. (<u>Id.</u> ¶ 37.) Plaintiff received annual pay raises from 2000 to 2002; however, in 2003, he did not receive a raise. (<u>Id.</u> ¶¶ 36, 40.) Although most of ISI's employees did not receive raises from

2

2000 to 2002 (Id. ¶ 39), Annette Balu ("Balu"), the only other employee in Plaintiff's department, received raises in 2001 and 2002, but not in 2000 (Balu Aff. 3). Additionally, while employed at ISI, Plaintiff received six loans and/or salary advances from ISI. (Defs.' Stmt. ¶ 42.) During Plaintiff's employment at ISI, he was not subjected to any comments about his age or race. (Defs.' Stmt. ¶ 21.) Prior to August of 2002, Plaintiff had no issues with his employment at ISI. (Id. ¶ 32.)

In August of 2002, an issue arose regarding an alleged "phantom employee". (Id.) An ISI employee's wife was listed on payroll at a lottery booth even though she did not work at the booth; in reality, hours attributed to the employee's wife were actually worked by the ISI employee. (Halpern Dep. 78; Defs.' Aff., Ex. V.) As a result, the employee did not receive overtime pay that he had earned. (Id.) Spencer notified Halpern of the phantom employee at a meeting on August 8, 2002. (Spencer Dep. 34-36.) Two ISI employees received written warnings for their involvement in the "phantom employee" scheme. (Defs.' Stmt. ¶ 53.) Plaintiff also received a written warning for his failure to timely disclose the existence of a "phantom employee" to senior management because he allegedly had knowledge of the situation for a substantial period of time. (Defs.' Aff., Ex. V.) Halpern, however, later stated that he did not know whether Plaintiff had knowledge of the "phantom employee" for any period of time before

disclosing it to him. (Halpern's Dep. 85.)

Subsequent to receiving the written warning, Plaintiff was disciplined for multiple payroll accounting irregularities, including his failure to: (1) make proper tax withholdings from employees' paychecks, including his own; (2) properly pay back a loan taken from ISI's 401(k) account; (3) account for several unauthorized salary advances; and (4) process some garnishments on his checks. (Defs.' Stmt. ¶ 55; Pl.'s Aff., Ex. F, Payroll Accounting Irregularities Mem.) Plaintiff disputes this written warning contending that he complied with ISI's payroll policies. (Spencer Dep. 59-63.) As support, Richard Dombrowski, ISI's former Chief Administrative Officer ("Dombrowski"), called ADP, ISI's payroll services provider, and was told that Plaintiff did not make any changes to his payroll deductions or the loan amounts he owed. (Pl.'s Aff., Ex. K, Dombrowski Aff.) Subsequently, on December 2, 2003, Plaintiff was warned in writing, this time for conducting personal business during company time. (Defs.' Stmt. ¶ 56; Pl.'s Aff., Ex. H.) Plaintiff, in response, contends that he was only checking his 401K balance, and that such conduct is commonplace amongst ISI employees and not personal business. (Pl.'s R. 56.1 Counter-Statement ("Pl.'s Stmt.") ¶ 56.)

In April 2004, Plaintiff ceased making interest payments on loans that he had received from ISI by altering the loan repayment schedule. (Defs.' Stmt. ¶¶ 57-58; Spencer Dep. 69-74;

Affidavit of Egbert Morales ¶ 7.) Plaintiff, in response, contends that Dombrowski found that Spencer did not, in fact, make any changes to his loan payments. (Dombrowski Aff.) Plaintiff, was then suspended without pay for three days for improperly changing the terms of his loan repayment schedule. (Defs.' Stmt. ¶ 61.) Thereafter, Egbert Morales ("Morales"), ISI's Comptroller, now would personally prepare Plaintiff's paycheck. (Id. ¶ 62.) Finally, on April 27, 2004, Plaintiff was given a "last chance" warning at a meeting with Morales and Stephen Greenbaum, ISI's Chief Executive Officer ("Greenbaum"). (Defs.' Stmt. ¶ 24.) At this meeting, Morales and Greenbaum explained to Plaintiff that any further violations of ISI policy would result in his termination. (Spencer Dep. 87-88.)

On May 27, 2004, Plaintiff intentionally did not deliver the checks for ISI's payroll on Thursday because he was angry that Morales had to personally prepare his check. (Spencer Dep. 107-108.) In response, Plaintiff argues that there was no company policy in place requiring delivery of the checks on Thursdays rather than on Fridays. (Pl.'s Stmt. ¶ 26.) Furthermore, Plaintiff contends that (1) Morales was in the practice of delivering Spencer's paycheck on Fridays (Pl.'s Aff., Ex. G, Morales Dep.), (2) Spencer needed his check to balance payroll (Spencer Dep. 104-105), and (3) the paychecks were dated for Friday. Defendants respond that there was a policy in place for

Spencer to deliver the checks on Thursday to Anthony Petrucci so that he could then distribute the checks to employees, some of whom do not work on Fridays. (Defs.' Reply Mem. Supp. Summ. J. ("Reply") 8) and that Plaintiff, as a salaried employee, did not need his actual check in hand to balance the payroll (Defs' Mem. Supp. Summ. J. 13). Furthermore, Plaintiff, in a recorded statement to the New York State Department of Labor, stated "The only thing I did differently on Thursday 5/27/04, was wait until 3:00 p.m. to give the paychecks to Tony. My usual habit in the past had been to give out the checks to the warehouse employees and the office employees early on Thursday." (Defs.' Aff., Ex I.)

The next day, May 28, 2004, Plaintiff was advised at a meeting with Greenbaum and Morales that holding back employee paychecks was a violation of the law. (Defs.' Stmt. ¶ 28.) Subsequently, on June 1, 2004, Plaintiff's employment was terminated for violating the "last chance" warning. (Defs.' Stmt. ¶ 29.)

B.   The Alleged Discrimination

Spencer brings claims of age-based and race-based discrimination, as well as retaliation against ISI and Halpern. In support of his discrimination claims, Spencer, for the most part, points to a few alleged events of disparate treatment. Plaintiff argues that he was treated differently in response to the "phantom employee" scheme, as opposed to two other ISI employees. (Pl.'s

Opp'n to Defs.' Mem. Supp. Summ. J. ("Opp'n") 2.) While the two alleged perpetrators of the scheme, both Caucasian, received a written warning for their participation like Spencer, the content of the warnings differ. The perpetrators' written warning was titled "Personnel Matters", whereas Spencer's warning was titled "Disciplinary Notice and Second Warning". (Defs.' Aff., Exs. V, W.) In addition, while Spencer allegedly reported the scheme after he had notice, rather than actively participate in the scheme like the two other ISI employees, he was told that his actions jeopardized his position in the company. (Defs.' Aff. Ex. V.)

Plaintiff also contends that he was denied a pay raise in 2003 while the only other employee in his department, Balu, a Caucasian, was given a raise. (Opp'n 3.) Plaintiff alleges that he did not receive a pay raise, in part, because he uncovered the "phantom employee" scheme. (Spencer Decl. ¶ 14.) In response to not getting a raise, Plaintiff admits that he told Halpern at a meeting that he should report the tax fraud ("phantom employee" scheme). (Spencer Dep. 51-52.) Plaintiff also alleges that he was unfairly treated when he received the Payroll Accounting Irregularities Memorandum and was disciplined for activities that other employees participated in without recourse. (Opp'n 4; Pl.'s Aff., Ex. F. ) In support, Plaintiff argues that another employee, a Caucasian, altered her tax withholding, but was not disciplined. (Opp'n 4; Halpern Dep. 123-25.) In addition, Plaintiff alleges

that he was discriminated against when he received a written warning for checking his 401k statement during company time when another employee was not disciplined for the same action. (Opp'n 5.) Spencer argues that, at least some of ISI's discriminatory actions on the basis of his age and race, were also acts of retaliation for disclosing the "phantom employee" scheme. (Spencer Dep. 54.)

In October of 2003, Plaintiff sent a memorandum to Halpern, Greenbaum, and Concetta Petrucci, ISI's former Director of Human Resources ("Petrucci"), that alleged he had been subjected to a hostile work environment at ISI. (Defs.' Stmt. ¶ 46.) ISI conducted an investigation regarding Plaintiff's allegations. (Id. ¶ 47.) Greenbaum and Petrucci met with Plaintiff regarding his allegations (Id. ¶ 49.) Plaintiff, however, did not cooperate at the meeting, and alleges that he refused to answer questions because (1) the meeting was conducted by Greenbaum, not Petrucci (Spencer Dep. 64-66), and (2) he was questioned in a hostile manner (Spencer Suppl. Decl. ¶ 15).

II. Procedural History

A. Prior Proceedings

On May 18, 2004, Spencer filed a complaint with the New York State Division of Human Rights ("DHR") for the alleged discrimination he faced at ISI. (Defs.' Aff., Ex. H.) On July 22, 2004, Spencer filed a supplemental complaint with the DHR alleging

that ISI fired him in retaliation for the initial complaint he filed. (Defs.' Aff., Ex. K.)[1] Following an investigation, on January 31, 2006, the DHR issued a Determination and Order After Investigation, dismissing Spencer's complaint against ISI. (Defs.' Aff., Ex. F., DHR Order.) The DHR held that "After investigation and following opportunity for review of related information and evidence by the named parties, the Division of Human Rights has determined that there is NO PROBABLE CAUSE to believe that the respondent had engaged in or is engaging in the unlawful discriminatory practice complained of." (Id.) In support of this finding, according to the DHR, the record showed that "On May 27, 2004, the complainant violated the warning given by the respondent by intentionally and unlawfully holding back distribution of employee paychecks because he felt he might not be receiving his own paycheck on that day." (Id.)

On September 24, 2004, following a hearing at which testimony was taken, an Administrative Law Judge issued a decision that affirmed the Department of Labor's conclusion that Plaintiff was disqualified from receiving unemployment benefits due to misconduct. (Defs.' Aff., Ex. M.) Subsequently, on December 10, 2004, the Unemployment Insurance Appeal Board issued a decision that affirmed the Administrative Law Judge's decision. (Defs.

---

[1]    At that time, Spencer was represented by counsel. (Defs.' Stmt. ¶ 10.)

9

Aff., Ex. G.)  On October 27, 2005, the Appellate Division, Third Department of the Supreme Court of New York upheld the Unemployment Insurance Appeal Board's decision.  In re Spencer, 22 A.D.3d 1010, 802 N.Y.S.2d 565 (App. Div. 2005).  The New York Court of Appeals subsequently denied Plaintiff's further attempt to appeal.  Spencer v. Commissioner of Labor, 7 N.Y.3d 701, 850 N.E.2d 1166, 818 N.Y.S.2d 191 (2006).

On May 26, 2006, Plaintiff commenced this action.  On March 29, 2007, this Court dismissed portions of the Complaint, and permitted Plaintiff to amend his Complaint in accordance with the Court's direction.  Then, on April 26, 2007, Plaintiff filed his Amended Complaint, asserting twelve claims: race-based discrimination in violation of Title VII and § 1981 against ISI and Halpern (respectively, the first, seventh, and eighth claims); age-based discrimination in violation of the ADEA (the second claim); retaliation in violation of Title VII, the NYHRL, and § 1981 (respectively, the third, fourth, fifth, sixth, ninth, tenth, eleventh, and twelfth claims).  On June 8, 2009, Defendants filed this motion for summary judgment.

B.  <u>Defendants' State Action Against Plaintiff</u>

On July 28, 2004, ISI and Halpern filed a Verified Complaint against Spencer in the Supreme Court of New York, Nassau County.  In the Complaint, the following claims were made: (1) defamation of ISI and Halpern to other ISI employees; (2)

10

defamation <u>per</u> <u>se</u> for harm to business; (3) <u>prima</u> <u>facie</u> tort for filing a false harassment claim with ISI and failing to cooperate with ISI's investigation; (4) duress for Spencer's repeated threatened legal action that was groundless; and (5) fraudulent concealment of the "phantom employee" scheme. (Pl.'s Aff., Ex. O.) In addition to punitive damages, 6.5 million dollars in damages is sought from Spencer. (<u>Id.</u>)

On November 8, 2004, Spencer sent a letter to the New York State Unemployment Appeals Board seeking a reversal of the decision that denied Plaintiff unemployment insurance benefits, in which Plaintiff alleged that Defendants engaged in illegal activity when they participated in the "phantom employee" scheme. (Defs. Stmt. ¶¶ 66-67.) Spencer sent a letter, on January 3, 2005, to United States Senators Hillary Clinton and Charles Schumer. (Pl.'s Stmt. ¶ 69.) In the letter, Spencer discusses the "phantom employee" scheme, as well as discriminatory treatment he faced at ISI. (<u>See</u> Pl.'s Aff., Ex. M.)

Subsequently, on November 8, 2006, the Supreme Court of New York, Appellate Division, Second Department reversed part of the trial court's decision, reinstating three claims that were dismissed, and allowing the Plaintiffs in this action to add two claims for defamation for Spencer's statements, made after the commencement of the action, to the New York State Unemployment Appeals Board and Senators Clinton and Schumer. <u>Int'l Shoppes,</u>

<u>Inc. v. Spencer</u>, 34 A.D.3d 429, 825 N.Y.S.2d 483 (App. Div. 2006).

<u>DISCUSSION</u>

I.   <u>Rule 56 Standard For Summary Judgment</u>

Summary judgment is only appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); <u>see</u> <u>also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A fact is "material" when it may affect the outcome of the suit. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). There is a "genuine" issue as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

The party moving for summary judgment bears the burden of demonstrating that there is no genuine issue as to a material fact. <u>McLee v. Chrysler Corp.</u>, 109 F.3d 130, 134 (2d Cir. 1997). Furthermore, "[i]n assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." <u>Id.</u> Although the moving party bears the initial burden, once that burden is met, the nonmoving party "must come forward with specific facts showing that there is a genuine

12

issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). Nevertheless, "[m]ere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986); see also Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) ("[U]nsupported allegations do not create a material issue of fact.").

"Summary judgment is appropriate even in discrimination cases, for, as this Court noted, 'the salutary purposes of summary judgment--avoiding protracted, expensive and harassing trials-- apply no less to discrimination cases than to . . . other areas of litigation.'" Weinstock, 224 F.3d at 41 (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)). At the same time, courts must be particularly careful when deciding a motion for summary judgment in an employment discrimination case as the "employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999); see also Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994) ("Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits, and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.") Therefore, a court should only grant an employer's motion for summary judgment when "the evidence of

discriminatory intent is so slight that no rational jury could find in plaintiff's favor." <u>Viola v. Philips Medical Sys. of N. Am.</u>, 42 F.3d 712, 716 (2d Cir. 1994).

## II.  <u>Local Rule 56.1: Statements Of Material Facts</u>

Pursuant to Local Rule 56.1, the party moving for summary judgment must provide a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." LOCAL FED. R. CIV. P. 56.1(a).  Similarly, the opposing party is required to identify in corresponding numbered paragraphs statements of material facts that are in dispute where "there exists a genuine issue to be tried." LOCAL FED. R. CIV. P. 56.1(b).  Necessarily, "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." LOCAL FED. R. CIV. P. 56.1(d).

Plaintiff, in his Counter-Statement of Facts, fails to properly respond to several paragraphs in Defendants' Statement of Facts; for instance, in ¶¶ 11-14 and ¶¶ 16-19, Plaintiff offers only conclusions of law that the evidence offered by Defendant-- including documents from various courts and state agencies--is inadmissible because it is hearsay.  (<u>See</u> Pl.'s R. 56.1 Stmt.

("Pl.'s Stmt.") ¶¶ 11-14, 16-19.) These documents, nevertheless, would be admissible at trial under Federal Rule of Evidence 803(8) as an official record. FED. R. EVID. 803(8); see also Rouse v. Hausman Services Corp., No. 93-CV-3215, 1995 WL 619868, *15 (S.D.N.Y. Oct. 23, 1995) (holding that DHR memorandum is admissible under Federal Rule of Evidence 803(8)). Consequently, where Plaintiff fails to properly respond to Defendants' statements for, among other things, failure to cite to admissible evidence, the Court hereby deems Defendants' statements admitted. See LOCAL FED. R. CIV. P. 56.1(c). ("Each numbered paragraph in the statement of material facts . . . will be deemed to be admitted for the purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); see also Zynger v. Dep't of Homeland Sec., 615 F. Supp. 2d 50, 59 (S.D.N.Y. 2009).

## III. Claims Of Discrimination Under Title VII And ADEA

Plaintiff claims that Defendants discriminated against him on the basis of his race and age in violation of Title VII and the ADEA. Title VII and ADEA claims are analyzed under the same standard, the McDonnell Douglas three-step, burden-shifting framework. See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005). Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct.

15

1817, 1824, 36 L. Ed. 2d 668 (1973). To establish a <u>prima facie</u> case of racial discrimination under Title VII, the plaintiff "must demonstrate that: (1) he belonged to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." <u>Terry v. Ashcroft</u>, 336 F.3d 128, 138 (2d Cir. 2003). Similarly, to establish a <u>prima facie</u> case of age discrimination under the ADEA, the plaintiff must show that: "(1) he was within the protected age group; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse employment action occurred under 'circumstances giving rise to an inference of discrimination.'" <u>Id.</u> at 138-39 (quoting <u>Roge v. NYP Holdings, Inc.</u>, 257 F.3d 164, 168 (2d Cir. 2001)).

Once the plaintiff establishes a <u>prima facie</u> case of discrimination, a rebuttable presumption of unlawful discrimination arises. <u>See</u> <u>McPherson v. New York City Dept. of Educ.</u>, 457 F.3d 211, 215 (2d Cir. 2006). The defendant, then, has the opportunity to rebut the presumption by establishing a legitimate, non-discriminatory reason for the allegedly discriminatory action. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802. If a legitimate, non-discriminatory reason is established, then the burden shifts back to the plaintiff to prove that the reasons provided by the defendant are a pretext for discrimination. <u>See</u> <u>McPherson</u>, 457

F.3d at 215.

A.    <u>Prima Facie Case For Discrimination</u>

Spencer establishes the first three elements of his prima facie case for both race-based and age-based discrimination. First, he is a member of a protected group under both Title VII and the ADEA as an African-American at the age of 63.   Second, he has shown he is adequately qualified for the position, receiving raises his first three full years at ISI, as well as receiving a commendation letter.   Third, he was subjected to an adverse employment action when his employment was terminated in 2004.   ISI does not dispute that Plaintiff can establish the first three elements of his <u>prima</u> <u>facie</u> case; ISI, however, does maintain that Plaintiff has not raised a genuine issue for trial regarding his satisfaction of the fourth element of his <u>prima</u> <u>facie</u> case. Specifically, ISI argues that Plaintiff has not provided sufficient evidence to give rise to an inference of age-based or race-based discrimination.

Plaintiff sets forth the following facts to support an inference of racial discrimination: (1) Plaintiff was disciplined as or more harshly as the two Caucasian employees who perpetrated the "phantom employee" scheme; (2) Plaintiff was disciplined for altering his tax withholdings while at least one other employee, a Caucasian, was not disciplined; (3) Plaintiff was reprimanded for checking his own 401K during company time while at least one other

employee, a Caucasian allegedly checked her 401K but was not similarly reprimanded; and (4) a Caucasian employee was not punished for delivering Plaintiff's check to him on Fridays, yet Plaintiff was ultimately terminated for failing to abide by a supervisor's order to deliver employees' checks on Thursday. Construing the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff has met his minimal burden of showing a prima facie case of racial discrimination. See McLee v. Chrysler Corp., 109 F.3d 130, 135 ("The burden that an employment discrimination must meet in order to defeat summary judgment at the prima facie stage is de minimis.")

Plaintiff provides the following facts to support an inference of age discrimination: (1) Balu, the only other employee in the payroll department, who at 54 years of age at the time of Plaintiff's termination, received more favorable treatment than Plaintiff; and (2) the unsubstantiated allegation that Plaintiff was replaced by a much younger employee. Given that the employee who allegedly received more favorable treatment than Plaintiff is approximately only fours year younger than Plaintiff, Plaintiff was 53 years of age when hired by ISI, and the allegation that Plaintiff was replaced by a much younger employee is not supported, Plaintiff does not satisfy the burden for a prima facie case for age discrimination. See Melnyk v. Adria Laboratories, 799 F. Supp. 301, 319 (W.D.N.Y. 1992). Regardless, as discussed below,

18

Defendant proffers a legitimate, non-discriminatory reason for Plaintiff's termination.

B.    Legitimate Non-Discriminatory Reason

As Plaintiff has established a prima facie case of racial discrimination, the burden shifts to Defendants to provide a legitimate, non-discriminatory reason for Plaintiff's termination. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 257, 101 S. Ct. 1089, 1096, 67 L. Ed. 2d 207 (1981). To rebut the presumption of discrimination in favor of the Plaintiff, ISI "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Id.

The Court finds that ISI has provided a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment. Specifically, ISI submits that Plaintiff's employment was terminated because of his intentional withholding of employees' checks after receiving a "last chance" warning. (Defs.' Stmt. ¶¶ 26, 29.) Moreover, this "last chance" warning followed from multiple episodes where Defendants disciplined Plaintiff. In addition to affidavits offered in support of the non-discriminatory reason, Plaintiff, concedes that he held the checks up because he was angry about the requirement that his check needed to be personally delivered by Morales. (Spencer Dep. 107-08.) The Court finds that ISI has stated a legitimate, non-discriminatory reason

for terminating Plaintiff's employment.

C.  <u>Pretext</u>

Because ISI has set forth a legitimate, non-discriminatory reason for Plaintiff's termination, the presumption of discrimination "drops from the picture." <u>Weinstock</u>, 224 F.3d at 42. Plaintiff, now must establish that the non-discriminatory reason for his termination was merely a pretext for actual discrimination; specifically, Plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge.'" <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 714 (2d Cir. 1996) (quoting <u>Woroski v. Nashua Corp.</u>, 31 F.3d 105, 110 (2d Cir. 1994)).

In this case, Plaintiff simply does not proffer enough evidence, if any, to support the finding that ISI's reason for his termination is false and that discrimination was the real reason for his discharge. Plaintiff, falls back on what he declares as less favorable treatment than other ISI employees who are not African-American. As discussed above, Plaintiff offers a few alleged examples--some of which are merely speculative--of being disciplined for activities that, when undertaken by Caucasian employees, went unaddressed.

By contrast, there is ample evidence in the record to

suggest that Plaintiff was treated as, or more, favorably as other ISI employees. For instance, he received a raise in each of his first full three years while many employees did not. Moreover, he received six loans and/or pay advances from ISI. Finally, he never had a complaint or issue at ISI until August of 2002 when he reported the "phantom employee" scheme. For example, in the letter sent to Senators Clinton and Schumer, he states, "Unfortunately, after reporting this corruption, I was ostracized, singled out and harassed by upper management mainly the President whom I had reported the crime to." (Pl.'s Aff., Ex. M; <u>see</u> <u>also</u> Spencer Dep. 95 ("[I] had no problems within the company prior to August 7, 2002.")) These statements do not support the finding that racial animus motivated Defendants' actions, but instead support the finding that any mistreatment Plaintiff received was based on his involvement with the "phantom employee" scheme--not actionable under Title VII. Mistreatment in the workplace is only actionable under Title VII if based on a plaintiff's membership in a protected class. <u>See</u> <u>Brown v. Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion is actionable under Title VII only when it occurs because of an employee's sex or other protected characteristic.").

In attempt to save his claim, Plaintiff argues that

summary judgment is inappropriate because he may be able to succeed on a mixed motive claim for racial discrimination. He argues that even if racial animus was not the exclusive reason for Plaintiff's termination, it was a substantial factor. Under a mixed motive claim, Plaintiff must show that racial animus was a substantial or motivating factor in the employer's adverse employment decision. Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1187 (2d Cir. 1992). Nevertheless, as discussed above, Spencer does not provide enough evidence to support that ISI's decision to terminate him was motivated, even in part, by racial animus.

Accordingly, the Court GRANTS summary judgment for Defendants on Plaintiff's Title VII racial discrimination claim and ADEA age discrimination claim.

IV. <u>Title VII Retaliation Claim For Plaintiff's Protected Activity</u>

Plaintiff also alleges ISI unlawfully retaliated by terminating him and filing a frivolous lawsuit against him because he filed a formal complaint with ISI's Human Resources Department and with the DHR. Title VII retaliation claims are also analyzed using the <u>McDonnell Douglas</u> burden-shifting framework. <u>See</u> <u>Knight v. City of New York</u>, 303 F. Supp. 2d 485, 495 (S.D.N.Y. 2004). After Plaintiff makes out a prima facie case for retaliation, the burden shifts to the Defendant to articulate "a legitimate, non-retaliatory reason for the complained of action." <u>Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 768 (2d Cir. 1998). If Defendant

meets this burden, Plaintiff, is then required to provide "evidence 'sufficient to raise a fact issue as to whether [the employer]'s reason was merely a pretext' for retaliation." Id. at 769.

To establish a prima facie case of retaliation Plaintiff must show that (1) he engaged in protected activity under Title VII; (2) the Defendants were aware of such activity; (3) the Defendants took adverse action against the Plaintiff; and (4) there is a causal connection between the protected activity and the adverse action. See Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006). Under the "protected activity" element, the plaintiff need only show that "he had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." Id. at 210 (quoting McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir. 2001)).

With regard to this retaliation claim, Plaintiff establishes a prima facie case: (1) Spencer's complaint to the DHR is protected activity; (2) Defendants had knowledge of that activity; (3) Defendants took adverse action against Plaintiff by terminating his employment; and (4) an indirect causal connection exists between Plaintiff's complaint to the DHR and his termination, only two weeks later. See Manoharan v. Columbia Univ. C. of Physicians & Surgeons, 842 F.2d 590, 593 ("Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse

action."); see also Quinn v. Green Tree Credit Corp., 159 F.3d 759,
769 (2d Cir. 1998) (holding that discharge ten days after plaintiff
filed complaint with state human rights office established prima
facie evidence of a causal connection between the protected
activity and retaliatory conduct).

In any case, Defendant, as discussed above, has set forth
legitimate, non-discriminatory reasons for Plaintiff's termination.
Plaintiff is unable to provide sufficient evidence that the reasons
articulated by Defendant was a pretext for retaliation. Plaintiff
does not point to sufficient evidence to raise a question of fact
as to whether ISI's reasons for its actions were a pretext for
retaliation.

Accordingly, the Court GRANTS summary judgment for
Defendant on Plaintiff's Title VII retaliation claim for his
termination.

V.   Claims Of Racial Discrimination And Retaliation Under § 1981

Sections 1981, 1983, and 1985 were enacted to protect
individuals against discrimination based on ethnic origin, race, or
ancestry. Section 1981, in particular, was aimed at protecting the
individual's right to be free from discrimination in making and
enforcing contracts. See Gibbs-Alfano v. Burton, 281 F.3d 12, 16
(2d Cir. 2002); see also Smith v. Sav. Bank of Rockland County, No.
91-CV-3088, 1992 WL 350743, at *7 (S.D.N.Y. Nov. 16, 1992) ("To
violate Section 1981, a defendant must have prevented a plaintiff

from making and enforcing contracts"). Specifically, Section 1981 states that:

> All persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts,. . . and to the full and equal benefits of all laws . . . as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a) (2000). Thus, courts in this Circuit require plaintiffs to demonstrate that (a) there has been a substantive violation of plaintiff's right to make contracts based on his race, and (b) the named defendants can be held liable for that violation. Philippeaux v. N. Cent. Bronx Hosp., 871 F. Supp. 640, 654 (S.D.N.Y. 1994), aff'd, 104 F.3d 353 (2d Cir. 1996).

In Lauture v. IBM Corp., the Second Circuit held that an employment at-will relationship can constitute a contract for purposes of Section 1981. 216 F.3d 258, 261-62 (2d Cir. 2000). Although employers are free to terminate at-will employees for good cause, bad cause, or no cause at all, they are not permitted to fire at-will employees for illicit causes. Id. at 263 (citing Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc., 160 F.3d 1048, 1051-52 (5th Cir. 1998)). In reaching that decision, the court emphasized that "to prevent at-will employees from suing under § 1981 would deny protection from workplace discrimination to a significant number of people . . . ." Id. at 263; see also Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 68 (2d Cir. 2000) (holding that an at-will employee may maintain a cause of

action for racial discrimination pursuant to § 1981).

Under Lauture, Plaintiff in this case must allege sufficient facts to plausibly show that: (1) he is a member of a racial minority; (2) Defendants' had an intent to discriminate against him on the basis of race; and (3) the discrimination suffered concerned one or more of the activities enumerated in § 1981. 216 F.3d at 261. In other words, the same standards used for Title VII apply to employment discrimination claims under § 1981. See Pratt v. Hustedt Chevrolet, No. 05-CV-4148, 2009 WL 805128, at *5 (E.D.N.Y. Mar. 27, 2009) (citing, for example, Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006); Whidbee, 223 F.3d at 69; Green Tree Credit Corp., 159 F.3d at 765). Applying the same Title VII standards to Plaintiff's claims seven through ten, for the reasons discussed above, the Court finds that Plaintiff does not raise a genuine issue of fact.

VI. Title VII, NYHRL, And § 1981 Claims For Retaliatory Litigation[2]

Plaintiff additionally alleges violations of Title VII, NYHRL[3] and § 1981 for Defendants retaliatory commencement of

_____

[2] The standards for deciding these claims are set forth in Section III, supra.

[3] Discrimination claims under New York Executive Law § 296 are analyzed similarly to claims made under Title VII and § 1981. See Pratt, 2009 WL 805128, at *5; Morris v. Ales Group USA, Inc., 04-CV-8239, 2007 WL 1893729, at *11 (S.D.N.Y. June 29, 2007); Stephenson v. Hotel Empls. & Rest. Empls. Union Local 100 of AFL-CIO, 6 N.Y.3d 265, 270, 844 N.E.2d 1155, 811 N.Y.S.2d 633 (2006).

frivolous litigation seeking over six million dollars in damages from Plaintiff. Plaintiff alleges that the litigation commenced by Defendants is retaliatory because the lawsuit is frivolous as the elements for a claim of defamation clearly cannot be met. For instance, Plaintiff argues that the letter sent to Senators Clinton and Schumer cannot be defamatory to ISI as the company is never mentioned by name. (See Opp'n 19.) Moreover, Plaintiff argues that courts have been, at the very least, wary of employers' suits against employees who have complained about discriminatory treatment. See Jacques v. DiMarzio, Inc., 200 F. Supp. 2d 151, 162 (E.D.N.Y. 2002) ("The Court is deeply troubled by [the employer's] $500,000 counterclaim, which appears to be nothing more than a naked form of retaliation . . . .").

Plaintiff establishes a prima facie case for retaliation for the commencement of litigation against him: (1) Plaintiff's complaint to the DHR is protected activity; (2) Defendants were aware of the protected activity; (3) Defendants took adverse action against Plaintiff when they commenced litigation against him in New York State court for, inter alia, defamation, see Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (holding that the anti-retaliation provision under Title VII "extends beyond workplace-related or employment-related retaliatory acts and harm"); and (4) a causal nexus is established between Plaintiff's complaint to the DHR and ISI's suit

against Plaintiff.[4]

Defendants offer several arguments in support of summary judgment with regard to these claims. First, Defendants argue that Plaintiff does not meet the first element of a prima facie case for retaliation. But Plaintiff's activity is protected, even if ISI's activity is lawful, as is the case here, so long as an objectively reasonable employee would have believed ISI's activities to be unlawful discrimination. Defendants argue Plaintiff, did not, in fact, hold an objectively reasonable belief that the actions he opposed are unlawful discrimination. Nevertheless, as discussed above, Plaintiff is able to make out a prima facie case for racial discrimination. As a result, his belief that he was unlawfully discriminated against would be objectively reasonable.

---

[4] First, there is the close proximity in time between the two events, as ISI commenced the lawsuit on July 28, 2004, less than two months after Plaintiff filed his complaint with the DHR. See Manoharan, 842 F.2d at 593 ("Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."); see also Green Tree Credit Corp., 159 F.3d at 769 (2d Cir. 1998) (holding that discharge ten days after plaintiff filed complaint with state human rights office established prima facie evidence of a causal connection between the protected activity and retaliatory conduct). Second, perhaps more importantly, in support of finding a causal connection, is that a great deal of Defendants' claims are based on Plaintiff's statements in August 2002, and thus, could have been asserted much earlier than July 28, 2004, almost two years later. See Kreinik v. Showbran Photo, Inc., No. 02-CV-1172, 2003 WL 22339268, at *8 (S.D.N.Y. Oct. 14, 2003) (holding causal connection with protected action and counterclaim when the employer's "claims could have been asserted earlier, but were instead asserted only after the [employee] initiated the action seeking to vindicate his federal rights").

Second, Defendants argue that Plaintiff did not satisfy the adverse action element of a prima facie case for retaliation. An adverse action is defined by the Supreme Court as one that is "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 57.[5] Defendants argue that since Burlington, some courts have found that when the employee, is not, in fact dissuaded from bringing a charge of discrimination against the employer, that employee, cannot, as a result establish an adverse action. See, e.g., Cheshire v. Paulson, No. 04-CV-3884, 2007 WL 1703180, at *6 (E.D.N.Y. June 12, 2007) ("Although the Second Circuit has recently held that an action may also be adverse if it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination, there is no such evidence here; on the contrary, Cheshire filed a second EEO complaint in January 2002.") (quotations and citations omitted). This Court does not agree with Defendants' argument for purposes of this case, as it would turn an objective test into a subjective test.[6] The

_____

[5] It is important to note the context of the Supreme Court's inclusion of a reasonable worker in the definition of an adverse action: to make actionable only materially adverse actions by employers. See Burlington, 548 U.S. at 67-68.

[6] More importantly, following Defendants' argument to its logical conclusion would end all retaliation claims for all practical purposes, clearly against Congress's intent when it enacted the statute. In a practical sense, the only way a retaliation claim can be brought is if the employee is not dissuaded. But if the employee is not dissuaded from pursuing

lawsuit against Plaintiff for over six million dollars could dissuade a reasonable worker, and thus, is an adverse action. <u>See</u> <u>Bill Johnson's Restaurants</u>, 461 U.S. at 740-41.

Third, Defendants argue that all of the retaliation claims for ISI's commencement of litigation against Plaintiff except under Title VII are barred by <u>res</u> <u>judicata</u> because they arise from the same "factual grouping" as in Plaintiff's complaint to the DHR. New York uses a transactional test for the application of <u>res</u> <u>judicata</u>, where a "claim will be barred by a determination in an earlier action if both causes of action are grounded on the same gravamen or are part of the same factual grouping, even if the later claim is brought under a different legal theory of recovery." <u>Smith v. Russell Sage College</u>, 54 N.Y.2d 185, 192-93, 429 N.E.2d 746, 445 N.Y.S.2d 68 (1981).

In this case, there was no claim for retaliatory commencement of litigation before the DHR; the litigation was commenced shortly after Plaintiff filed his supplemental complaint with the DHR. The facts surrounding the retaliatory litigation claims are much different than the facts surrounding the claims before the DHR for racial discrimination and retaliatory termination as it involves a different adverse action, as well as different motives behind the adverse action. <u>See</u> <u>Benson v. North</u>

---

charges, according to Defendants, they cannot meet the adverse action element of a retaliation claim.

Shore-Long Island Jewish Health Systems, 482 F. Supp. 2d 320, 326 (E.D.N.Y. 2007) (holding that retaliatory termination claim is not precluded because the facts surrounding this claim are different than the claims previously before the DHR for discrimination).[7] Although the DHR had not yet issued a decision when the litigation was commenced, there is no evidence that Plaintiff could have added this claim to a second supplemental complaint or that this claim would fall within the scope of the DHR's jurisdiction. In short, while the DHR dismissed Plaintiff's complaint, finding that there was no probable cause for his claims of discrimination and retaliatory termination, the merits of Plaintiff's retaliatory commencement of litigation claim is independent of the claims before the DHR. See Davis v. State Univ. of New York, 802 F.2d 638, 642 (2d Cir. 1986) ("A finding of unlawful retaliation is not dependent on the merits of the underlying discrimination complaint.").

In the event that the Court finds that Plaintiff has established a prima facie case for these claims, Defendants offer as their legitimate, non-discriminatory reason for filing its litigation that the litigation is not frivolous. In support of this argument, Defendants only offer the Second Department's decision, reversing the lower court's decision that granted

---

[7] It is important to note that the plaintiff in Benson could not make the retaliatory termination claim to the DHR as she was terminated after her charge before the DHR was dismissed. Id.

Spencer's motion to dismiss on several claims. See 34 A.D.3d 429,
825 N.Y.S.2d 483 (App. Div. 2006). Plaintiff argues that the
litigation is frivolous for a variety of reasons. (See Opp'n 18-
20.) At this time, it is rather unclear why Defendants initiated
the litigation. Even if the litigation is not frivolous, it still
may be considered retaliatory if motivated, even partially, by a
retaliatory animus. See Gordon v. New York City Bd. of Educ., 232
F.3d 111, 117 (2d Cir. 2000) ("Title VII 'is violated when a
retaliatory motive plays a part in adverse employment actions . .
. whether or not it was the sole cause.") (quoting Cosgrove v.
Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)).

Given the considerable time between when the claims arose
and when Defendants filed suit--almost two years--and the several
issues surrounding Defendants' suit that are raised by Plaintiff
and unanswered by Defendants, there are genuine issues of fact
regarding Plaintiff's claims for retaliatory commencement of
litigation against Defendants. Of particular concern, is the
"chilling effect of a state lawsuit upon an employee's willingness
to engage in protected activity" where the complainant seeks very
large damages, here, over six million dollars. Bill Johnson's
Restaurants, Inc. v. National Labor Relations Board, 461 U.S. 731,
741, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983).

Accordingly, the Court DENIES summary judgment for
Defendants on Plaintiff's Title VII, NYHRL, and § 1981 claims for

retaliatory commencement of litigation.

<u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment on Plaintiff's (1) race discrimination claims, brought pursuant to Title VII and § 1981, (2) ADEA age discrimination claim, and (3) retaliatory termination claims, brought pursuant to Title VII and § 1981. The Court DENIES Defendants' motion for summary judgment on Plaintiff's retaliatory commencement of litigation claims, brought pursuant to Title VII, NYHRL, and § 1981.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     March  29 , 2010
           Central Islip, New York