**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
ARLEIGH SPENCER,

                                    Plaintiff,                            **MEMORANDUM**
                                                                          **AND ORDER**

                - against -                                               CV 06-2637 (AKT)

INTERNATIONAL SHOPPES, INC., and
MICHAEL HALPERN, personally and as
President of International Shoppes, Inc.,

                                    Defendants.
----------------------------------------------------------X
**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.        PRELIMINARY STATEMENT

        Plaintiff Arleigh Spencer ("Spencer" or "Plaintiff") commenced this action on May 26,

2006 against International Shoppes, Inc. ("ISI") and Michael Halpern ("Halpern"), personally

and as President of ISI (collectively, "Defendants"), alleging race and age based discrimination

and retaliation.  Defendants previously moved for summary judgment seeking dismissal of all of

Plaintiff's claims.  Judge Seybert granted their motion in part, dismissing the ADEA and Title

VII discrimination claims, the Title VII retaliation claim and the race discrimination claim under

§ 1981.  However, Judge Seybert denied the portion of the motion which sought dismissal of

Plaintiff's claims for retaliatory commencement of litigation pursuant to Title VII of the Civil

Rights Act of 1964 ("Title VII"), New York Executive Law § 296 et seq. ("NYHRL"), and 42

U.S.C. § 1981.  DE 90 ("Sum. J. Op."); *Spencer v. International Shoppes, Inc.*, No. 06-CV-

2637, 2010 WL 1270173 (E.D.N.Y. March 29, 2010) ("*Spencer I*").  As a result of that decision,

the claims based on Defendants' alleged retaliatory commencement of  litigation are the only

claims remaining in this case.[1]

-------------------------------------------------------

[1]        In the Statement of Material Facts section of Plaintiff's Memorandum of Law in
Opposition to Summary Judgment, Plaintiff describes several acts of retaliation beginning in

On January 11, 2011 the parties consented to this Court's jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  DE 120.  While the case was proceeding, the Hon. Ute Wolff Lally, Justice of the New York State Supreme Court, Nassau County rendered her decision after trial of ISI and Michael Helpern's suit against Arleigh Spencer in state court.  A copy of that decision is attached as Exhibit B to the Certification of Daniel C. Ritson, Esq. in Support of Defendants' Motion for Summary Judgment [DE 162-1] ("Ritson Cert.").  In that decision, Justice Lally dismissed seven of the eight causes of action brought by ISI and Halpern, leaving only the Sixth Cause of Action for defamation *per se* by Spencer against Halpern.  Defendants' counsel then wrote this Court requesting that the Court dismiss Plaintiff's remaining claim in federal court in light of Justice Lally's decision.  At a September 21, 2011 Conference, I advised counsel that I would need briefing on this issue and would therefore treat Defendants' letter as a request for a pre-motion conference.  *See* DE 159.  After hearing from counsel regarding the effect of the state court action, I set a briefing schedule for Defendants' proposed motion to dismiss the instant case.  *Id*.

Thereafter, Defendants filed their motion, denominated as a second motion for summary judgment.  Having considered Defendants' Memorandum of Law in Support of Motion for Summary Judgment [DE 162-9] ("Defs.' Mem."), Plaintiff's Memorandum of Law in Opposition to Summary Judgment [DE 163-3] ("Pl's. Mem."), Defendants' Reply Memorandum of Law in Further Support of Motion for Summary Judgment [DE 164] ("Defs.' Reply Mem."), as well as the supporting affidavits, certain deposition transcripts, and the parties' Local Civil

---

September 25, 2003.  Pl's Opp. [DE 163-3] at 4-7.  In light of Judge Seybert's decision, however, these claims are not before the Court.

Rule 56.1 Statements ("Defs.' Stmt." [DE 162-10] and "Pl.'s. Counterstmt." [DE 163-4]), the

Court DENIES Defendants' motion for summary judgment for the reasons that follow.

## II.   BACKGROUND

The following facts are taken from Judge Seybert's findings in *Spencer I*[2] and the

relevant decisions issued and submissions made in the allegedly retaliatory litigation.  For

purposes of this motion, the facts are construed in the light most favorable to Spencer as the

party opposing summary judgment, with any factual disputes resolved in Spencer's favor.  *See*

*Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001).

### A.   Plaintiff's Employment at ISI

Spencer, a fifty-three year old African-American male, began working at ISI as a payroll

clerk on September 27, 1999. Sum. J. Op. at 2.  During the course of his employment, Spencer

was promoted to payroll coordinator, and received annual pay raises from 2000 to 2002,

although he had been notified at his initial job interview that the company had no policy

requiring such raises.  *Id*.  Prior to August of 2002, Spencer's employment was without incident.

*Id*. at 3.

On August 8, 2002, Spencer notified Halpern, his boss, as well as the President of ISI, of

a "phantom employee" scheme.  *Id*.  In this alleged scheme, the wife of an ISI employee was

listed on the payroll although she did not work there, and hours attributed to the employee's wife

were actually worked by the ISI employee.  As a result, the ISI employee did not receive

overtime pay that he had earned.  When the scheme was disclosed, two ISI employees were

disciplined for their involvement.  Spencer received a written warning for failing to make a

---

[2]      As this Court has previously ruled, Judge Seybert's factual findings made in connection
with her summary judgment decision are law of the case.  DE 125 at 3-4.

timely disclosure of the scheme to senior management despite his alleged knowledge of the scheme for a substantial period of time.  *Id*.

Spencer was also disciplined for multiple payroll accounting irregularities (which Spencer disputes), including his failure to:  "(1) make proper tax withholdings from employees' paychecks, including his own; (2) properly pay back a loan taken from ISI's 401(k) account; (3) account for several unauthorized salary advances; and (4) process some garnishments on his checks."  *Id*. at 4.  In December of 2003, Spencer  received an additional written warning for conducting personal business during company time, a charge he also disputes.  *Id*.  He was then suspended without pay for three days for improperly changing the terms of his loan repayment schedule.  *Id*. at 4-5.  Eventually, Spencer was given a "last chance" warning that any further violations of company policy would result in his termination.  *Id*. at 5.

Approximately one month after the "last chance" warning, Spencer delayed delivery of the payroll checks one day from Thursday to Friday.  *Id*.  The parties dispute whether Spencer's action was in violation of ISI policy.  *Id*.  Spencer was terminated on June 1, 2004 because, according to the Defendants, his action with respect to the late delivery of the payroll checks violated his "last chance" warning.  *Id*. at 6.

In October of 2003, Spencer sent a memorandum to ISI management in which he claimed that he had been subject to a hostile work environment.  *Id*. at 8.  ISI conducted an investigation.  *Id*.  Spencer then filed a complaint against Defendants with the New York State Division of Human Rights ("DHR") on May 18, 2004 alleging discrimination on the basis of his age and race.  *Id*.  On July 22, 2004, Spencer filed a supplemental DHR complaint asserting that he was terminated in retaliation for filing the initial complaint.  *Id*. at 8-9.  The DHR dismissed the complaint on January 31, 2006, finding that there was no probable cause to believe that

4

Defendants engaged in the asserted unlawful discriminatory practices alleged by the Plaintiff.
*Id*. at 9.

### C.  Defendants' State Court Action Against Spencer and Related Events

On July 28, 2004, Halpern and ISI, along with two other companies (the "State Court
Plaintiffs"), filed an action against Spencer in the New York State Supreme Court, Nassau
County, alleging defamation, defamation *per se*, *prima facie* tort, duress, and fraudulent
concealment (the "State Court Lawsuit").  *See* State Court Lawsuit Complaint, attached as
Ex. 13 to the Certification of Peter J. Famighetti [DE 163 - 163-2] ("Famighetti Cert.").  The
allegations centered around statements Spencer made regarding the phantom employee scheme
and Spencer's harassment complaints.  *Id*.  The lawsuit sought $6.5 million in damages, as well
as punitive damages.  Sum. J. Op. at 11.

After the State Court Lawsuit was filed, Spencer made additional statements regarding
the phantom employee scheme.  On November 8, 2004, Spencer sent a letter to the
Unemployment Insurance Appeal Board seeking a reversal of its decision to affirm the order of a
Department of Labor Administrative Law Judge disqualifying Spencer from receiving
unemployment benefits due to misconduct.  *Id*. at 9, 11.  In that letter, Spencer stated that ISI and
Halpern engaged in unlawful activity with respect to the phantom employee scheme.  *Id*.  On
January 3, 2005, Spencer also set letters regarding the phantom employee scheme to United
States Senators Hillary Clinton and Charles Schumer.  *Id*. at 11.

On March 1, 2005, the Supreme Court, Nassau County granted Spencer's motion to
dismiss the State Court Lawsuit on the grounds that Spencer could not be held liable for making
statements which were true.  *See* March 1, 2005 Order, Famighetti Cert., Ex. 15.  The court also
denied the State Court Plaintiffs' two motions for leave to amend seeking to add claims based on

the statements made to the Unemployment Appeals Insurance Board and Senators Clinton and Schmumer. *See id.*, Exs. 14, 15. On November 8, 2006 the Supreme Court of the State of New York, Appellate Division, Second Department reversed the trial court's orders granting the motion to dismiss and denying the motions to amend on the grounds that whether or not the alleged defamatory statements were substantially true could not be determined as a matter of law on the record presented. *International Shoppes, Inc. v. Spencer*, 34 A.D.3d 429, 430, 825 N.Y.S.2d 483 (2d Dep't 2006). Accordingly, the Second Department reinstated the dismissed claims, and granted Defendants leave to add four additional defamation claims which arose after the initiation of litigation. *Id.* at 429-30.

The case ultimately proceeded to trial on the following causes of action:

- Second Cause of Action: defamation *per se* with respect to Halpern based on Spencer statements to Halpern, including "you are an asshole – I should have sued your ass before;"

- Third Cause of Action: defamation *per se* with respect to ISI predicated on Spencer's statement that the "company is committing fraud" and "is doing things that are illegal;"

- Fourth Cause of Action: fraudulent concealment of the "phantom employee" scheme;

- Fifth Cause of Action: defamation *per se* with respect to ISI based on Spencer's letter to the Unemployment Insurance Appeals Board;

- Sixth Cause of Action: defamation *per se* with respect to Halpern based on Spencer's letter to the Unemployment Insurance Appeals Board;

- Seventh Cause of Action: defamation *per se* with respect to ISI based on Spencer's letter to Senators Schumer and Clinton; and

- Eighth Cause of Action: defamation *per se* with respect to Halpern premised on Spencer's statement in the letter to the Senators that he was "ostracized, singled out and harassed by upper management mainly the president."

*See* Aug. 19, 2011 Order ("State Ct. Trial Order") at 4-8, attached as Ex. B to the Ritson

Certification.

On August 19, 2011, after a bench trial, Justice Ute Wolff Lally issued a decision on the

merits. *Id*. Justice Lally found that Spencer lacked credibility and therefore she resolved any

conflicts in testimony in favor of the State Court Plaintiffs. *Id*. at 2. With regard to the First

Cause of Action, the court found that this portion of the pleading appeared to be "nothing more

than a recitation of jurisdictional and lead-in allegations." *Id*. at 4. The court dismissed the

Second Cause of Action on the grounds that "a reasonable listener would understand that the

statement 'you are an asshole – I should have sued your ass before' conveyed an opinion rather

than a fact." *Id*. at 5. With respect to the Third, Fifth, and Seventh Causes of Action, Justice

Lally found that the content was substantially true since a managerial employee at ISI did devise

and carry out a phantom employee scheme that was illegal. *Id*. at 5-7. Therefore, the court

dismissed the claims because truth constitutes an absolute defense to defamation *per se*. *Id*. The

Fourth Cause of Action was dismissed because the State Court Plaintiffs failed to prove that

Spencer knew about the phantom employee scheme prior to disclosing it. *Id*. at 5-6. The court

noted that the State Court Plaintiffs did not produce any witnesses to support this claim and the

Disciplinary Notice they introduced was self-serving and without probative value. *Id*. The

Eighth Cause of Action was likewise dismissed because the claim of being ostracized or singled

out did not rise to the level of defamation *per se* and because a reasonable person would not

understand the claim of harassment to be referring to a crime. *Id*. at 7-8.

The State Court Plaintiffs succeeded on the Sixth Cause of Action. That claim was based

on the following language from the letter Spencer sent to the Unemployment Insurance Appeals

Board:

> Michael Halpern the president of the company is trying to fool this division with misleading information in reference to the phantom employee. Mr. Mody [sic], who worked 67.5 hours per week, was forced to accept regular wages in lieu of overtime pay and it is an outraged [sic] and injustice of management. If I didn't not stumble on the fraud it would have continue [sic]. Mr. Mody a subordinate had to be encouraged by management… Mr. Halpern is nervious [sic] and has a right to be. This act is criminal and for the president not to terminate anyone speaks for itself.

*Id*. at 6.  Justice Lally ruled as follows regarding the letter:

> It accuses the plaintiff, Michael Halpern, of fraud and a criminal act. One employee's wrongdoing which was quickly corrected by the president of the corporation upon discovery is not truthful when asserted against him. [Spencer] admitted that Michael Halpern had no knowledge of the phantom employee until so informed by the defendant and the problem had been corrected within a month. Therefore, it was a was a false statement published without privilege or authorization to a third party, constituting a serious crime.

*Id*. at 7.

In sum, the State Court Plaintiffs were successful on only one of their claims – the defamation *per se* claim asserted by Halpern regarding statements made by Spencer in his letter to the Unemployment Insurance Board of Appeals. In a separate hearing regarding damages, Justice Lally denied the State Court Plaintiffs' requests for compensatory damages because they failed to offer any proof of such damges at trial. *See* Nov. 22, 2011 Decision, DE 169. The court, however, assessed punitive damages in the amount of $3,000 against Spencer based solely on the Sixth Cause of Action. *Id*. In reaching this figure, the court noted that Spencer engaged in "evasive and deceptive tactics" regarding his sources of income. *Id*.

**D.    Procedural History of the Instant Action**

On May 26, 2006, Spencer filed the Verified Complaint in this Court. DE 1. Judge Seybert dismissed several of the causes of action because they were time-barred and granted

Plaintiff leave to amend to add additional claims.  *See* DE 12.

On April 26, 2007, Spencer filed an Amended Complaint.  DE 13.  Discovery closed in November of 2008 [DE 91] and Defendants filed their first motion for summary judgment on June 8, 2009.  *See* DE 84.  On March 29, 2010, in *Spencer I*, Judge Seybert granted Defendants' motion with respect to the race discrimination claims, age discrimination claim, and retaliatory termination claims; however, summary judgment was denied with respect to the Title VII, NYHRL, and § 1981 retaliation claims based on Defendants' filing of the State Court Lawsuit. *See* Sum. J. Op.  Thereafter, Defendants filed a motion for reconsideration regarding the retaliatory litigation claims [DE 92] which Judge Seybert denied.  *See* DE 101.

On January 11, 2011, the parties consented to the jurisdiction of a United States Magistrate Judge for all purposes.  DE 120.  Jury selection was set to begin May 16, 2011, with the trial to follow immediately.  Electronic Order dated Jan. 31, 2011.  The trial, however, was adjourned due to, *inter alia*, the pendency of the State Court Lawsuit.  Soon after the trial of the State Court Lawsuit concluded, Plaintiff's counsel advised the Court that Plaintiff had suffered a stroke which he claims was the result of stress from the State Court Lawsuit.  *See* DE 150. Accordingly, Plaintiff's counsel moved to re-open discovery for the limited purpose of investigating the stroke and to make an assessment regarding damages and whether Plaintiff would attempt to link the purported stroke to his damages claims.  *Id*.  The Court granted Spencer's motion solely for this purpose.  DE 152.

On September 2, 2011, Defendants filed a two-page letter motion seeking dismissal of this action in light of what Defendants characterized as a decision in favor of ISI and Halpern and against Spencer in the State Court Lawsuit.  DE 155.  The Court denied the motion, but granted Defendants' request to treat the submission as a pre-motion conference letter.  *See*

9

Electronic Order dated September 13, 2011.  A pre-motion conference was held on September 21, 2011 and a briefing schedule was established for the instant motion.  DE 159.  At that conference, Plaintiff discussed voluntarily withdrawing his claims against Defendant Halpern and the parties were encouraged to resolve this issue prior to serving the summary judgment motion papers.  *Id*.  The Court notes that no stipulation or other document reflecting the withdrawal of claims against Halpern has been filed.

Plaintiff included a cross-motion for summary judgment in his opposition to Defendants' motion for summary judgment.  DE 163-3 at 17.  The cross-motion was based on certain statements allegedly made by Defendant Halpern which Plaintiff claimed resolved any issues of fact regarding Halpern's motive for filing the State Court Lawsuit.  *Id*.  Plaintiff subsequently moved to withdraw the cross-motion [DE 165] and the Court has granted that motion.  *See* Electronic Order dated September 28, 2012.

## III.   STANDARD OF REVIEW

### A.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure dictates that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008).  A fact is "material" when it may affect the outcome of the suit. *Anderson*, 477 U.S. at 248.  To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences from that evidence in the light

10

most favorable to the non-moving party.  *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005).

Where the movant shows a prima facie entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006).  "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment."  *Id.*; *see also McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor").  Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Dobbs v. Dobbs*, No. 06-CV-6104, 2008 WL 3843528, at *1 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims") (internal quotation marks omitted).

With respect to employment discrimination cases, the Second Circuit has advised trial courts to "be cautious about granting summary judgment to an employer when . . . *its intent is in issue*," and "affidavits and depositions must carefully be scrutinized for circumstantial proof which, if believed," would allow the plaintiff to prevail.  *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.2d 1219, 1223 (2d Cir. 1994) (emphasis added).  Summary judgment is, however, "appropriate even in discrimination cases for . . . the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination

cases than to other areas of litigation." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**B.     Retaliation Standard**

Retaliation claims under Title VII, NYHRL and § 1981 are treated similarly. *See, e.g.*, *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 283 n.1 (2d Cir. 2001)); *Bazile v. City of New York*, 215 F. Supp. 2d 354, 393 (S.D.N.Y. 2002). These claims are analyzed using the burden-shifting framework laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) ("The *McDonnell Douglas* burden shifting analysis . . . applies to retaliation claims brought pursuant to Title VII."); *Pratt v. Hustedt Chevrolet*, No. 05-CV-4148, 2009 WL 805128, at *10 (E.D.N.Y. Mar. 27, 2009).

Under the *McDonnell Douglas* burden-shifting scheme, plaintiff bears the initial burden of making out a *prima facie* case for retaliation. 411 U.S. at 802. To make a *prima facie* showing of retaliation, the plaintiff must demonstrate that (1) he engaged in a protected activity under Title VII [or NYSHRL or § 1981]; (2) the employer was aware of this activity; (3) the employer took adverse action against the plaintiff; and (4) the existence of a causal connection between the protected activity, i.e., "that a retaliatory motive played a part in the adverse employment action." *E.g.*, *Kessler v. Westchester County Dept. of Social Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006).

Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Weinstock.*, 224 F.3d at 42. "The defendant must clearly set forth, through the introduction of admissible

12

evidence, reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742 (1993) (internal quotation marks omitted; emphasis in original). "Upon the defendant's articulation of such a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the *prima facie* case drops from the picture." *Weinstock*, 224 F.3d at 42. In order for the case to continue, the plaintiff must come forward with evidence that the defendant's proffered, non-discriminatory reason is a pretext for actual discrimination. *Id.*

## IV. DISCUSSION

Plaintiff claims that the State Court Lawsuit initiated by Defendants violates the anti-retaliation provisions of Title VII, the NYHRL, and 42 U.S.C. § 1981. Judge Seybert previously analyzed this claim in *Spencer I* and found that Plaintiff established a *prima facie* case of retaliation. Specifically, Judge Seybert found that: (1) Spencer's filing of a complaint with the DHR is protected activity; (2) Defendants had knowledge of that activity; (3) Defendants took adverse action against Plaintiff by commencing the State Court Lawsuit; and (4) a causal nexus exists between the filing of the DHR complaint and the initiation of the State Court Lawsuit. Sum. J. Op. at 27-31. After concluding that Plaintiff established a *prima facie* case of retaliation, Judge Seybert held the following regarding the next step in the *McDonnell Douglas* framework – i.e., whether Defendants had a legitimate, non-retaliatory reason for filing the lawsuit:

> . . . Defendants offer as their legitimate, non-discriminatory reason for filing its litigation that the litigation is not frivolous. In support of this argument, Defendants only offer the Second Department's decision, reversing the lower court's decision that granted Spencer's motion to dismiss on several claims. *See* 34 A.D.3d 429, 825 N.Y.S.2d 483 (App. Div. 2006). Plaintiff argues that the litigation is frivolous for a variety of reasons. (*See* Opp'n 18-20.)

13

> At this time, it is rather unclear why Defendants initiated the litigation. Even if the litigation is not frivolous, it still may be considered retaliatory if motivated, even partially, by a retaliatory animus. *See Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000) ("Title VII 'is violated when a retaliatory motive plays a part in adverse employment actions ... whether or not it was the sole cause.") (quoting *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir. 1993)).
>
> Given the considerable time between when the claims arose and when Defendants filed suit-almost two years-and the several issues surrounding Defendants' suit that are raised by Plaintiff and unanswered by Defendants, there are genuine issues of fact regarding Plaintiff's claims for retaliatory commencement of litigation against Defendants. Of particular concern, is the "chilling effect of a state lawsuit upon an employee's willingness to engage in protected activity" where the complainant seeks very large damages, here, over six million dollars. *Bill Johnson's Restaurants, Inc. v. National Labor Relations Board,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983).

*Id.* at 31-32.

As this Court has previously held, Judge Seybert's findings and conclusions are law of the case and will not be re-visited absent "intervening development of law or fact that renders reliance on Judge Seybert's earlier ruling inadvisable." *See* DE 125 at 4 (citing *Calabrese v. CSC Holdings, Inc.*, No. 02-CV-5171, 2009 WL 425879, at * 6 (E.D.N.Y. Feb. 19, 2009); *accord Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (quoting *Zdanok v. Glidden*, 327 F. 2d 944, 953 (2d Cir. 1964)) (noting that law of the case can be revisited and disregarded "only when the court has a 'clear conviction of error' with respect to a point of law on which its previous decision was predicated.").

The only intervening development since *Spencer I* is the issuance of the State Court Lawsuit Trial Order which dismissed six of Defendants' claims on the merits, found one claim to be procedurally defective, and held that Defendants met their burden of proof on a single

14

defamation *per se* claim, which relates only to Defendant Halpern.  *See* State Ct. Trial Order.

Defendants argue that in light of this decision, it is indisputable that the State Court Lawsuit was

reasonably based and Defendants therefore had a legitimate, non-discriminatory reason for filing

the suit.  As discussed in greater detail below, the Court disagrees for two independent reasons:

(1) the relevant inquiry is not whether the lawsuit was ultimately meritorious, but rather whether

the suit was brought with retaliatory intent, and (2) even if the sole inquiry was whether the suit

had merit, Defendants were not successful on seven of the eight asserted claims.

###### A.     Reasonably-Based Litigation can be Retaliatory if it is Motivated, Even Partially, by a Retaliatory Animus

Defendants argue that the standard set forth by the United States Supreme Court in *Bill*

*Johnson's Restaurants, Inc. v. National Labor Relations Board*, 461 U.S. 731, 103 S. Ct. 2161

(1983), a National Labor Relations Act ("NLRA") case, applies here and, under that standard,

Defendants' successful litigation of one of their eight claims in the State Court Lawsuit

precludes liability under the anti-retaliation laws, regardless of their motivation for pursuing the

lawsuit.  In *Bill Johnson's*, the Supreme Court considered whether a state-court civil suit brought

by an employer, commenced with retaliatory intent, could be enjoined as a violation of the

NLRA.  *Id.* at 733.  The Supreme Court held that the "filing and prosecution of a well-founded

[state court] lawsuit [brought by an employer] may not be enjoined as an unfair labor practice [in

violation of the NLRA], even if it would not have been commenced but for the plaintiff's desire

to retaliate against the defendant for exercising rights protected by the Act."  *Id*. at 743.  The

Supreme Court further held, regarding completed lawsuits, that "the filing of a meritorious law

suit, even for a retaliatory motive, is not an unfair labor practice."  *Id*. at 747.  In contrast, Judge

Seybert held in  *Spencer I* that "[e]ven if the litigation is not frivolous, it still may be considered

15

retaliatory if motivated, even partially, by a retaliatory animus." *See* Sum. J. Op. at 32 (citing *Gordon*, 232 F.3d at 117 ("Title VII 'is violated when a retaliatory motive plays a part in adverse employment actions ... whether or not it was the sole cause.'")).  Defendants make no attempt to reconcile the two holdings and, in fact, completely ignore *Spencer I*, despite the fact that it is the law of the case.  For the reasons that follow, the Court finds that *Bill Johnson's* is inapplicable here and the Court therefore adheres to the standard set forth in *Spencer I*.

First, *Bill Johnson's* was an NLRA case and the Supreme Court has never held that the test established in that case should be applied in the employment discrimination context. *Durham Life Insurance Co. v. Evans*, 166 F.3d 139, 157 (3d Cir. 1999) is instructive on this point.  In that case, the Third Circuit rejected the defendant-employer's argument that the retaliation claim should be dismissed unless the allegedly retaliatory litigation lacked a reasonable basis under *Bill Johnson's*.  The court held that *Bill Johnson's* was inapplicable because that case "construed a specific, ambiguous provision of the NLRA defining unfair labor practices" and its "reasoning has not been extended to Title VII, in part because the prohibition on retaliation is so explicit and the public policy behind the retaliation provision so compelling." *Id*.; *see also Bryant v. Military Dep't of Mississippi*, 597 F.3d 678, 692 (5th Cir. 2010) (declining to apply *Bill Johnson's* standard to federal civil rights claims).  The Court finds these decisions compelling and persuasive.

The proposition that the *Bill Johnson's* standard is inapplicable in the employment discrimination context is strengthened by the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006).  There, the Supreme Court clarified the broad scope of Title VII's anti-retaliation provision and held that this provision covers any materially adverse action by an employer "which in this context means it

16

well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68. The Court explained that this standard, which focuses "on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position . . . will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id.* at 69-70. Indeed, in the context of a retaliatory litigation claim, one court in this District has observed that "after *Burlington*, a plaintiff can prevail on a retaliation claim if she can 'show that a reasonable employee would have found the challenged action materially adverse, which in this context means that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Illiano v. Mineola Union Free School Dist.*, 585 F. Supp. 2d 341, 352 (E.D.N.Y. 2008) (quoting *Kessler v. Westchester County Dept. of Social Services*, 461 F.2d 199, 207 (2d Cir. 2006)); *see Walsh v. Irving Stern's Costumes*, No. 05-CV-2515, 2006 WL 2380379, at *3 (E.D. Pa. Aug. 15, 2006).[3]

Courts in this Circuit evaluate allegedly retaliatory litigation by conducting a fact-specific inquiry into the employer's intent as instructed by *Burlington Northern*, rather than focusing solely on the merits of the litigation as the Court did in *Bill Johnson's*. For example, in *Penberg v. Healthbridge Management*, the court analyzed whether the defendant's counterclaim for breach of fiduciary duty and its decision to pursue sanctions for destruction of evidence

---

[3]      The Court notes that *Burlington Northern* cited *Bill Johnson's*, but only as an example of the fact that courts have interpreted retaliation provisions to protect against a broader scope of conduct than the primary substantive provisions of various statutes. 548 U.S. at 66-67. In Judge Seybert's Summary Judgment Opinion, she also cited *Bill Johnson's*, this time to reflect the Supreme Court's recognition of the "chilling effect of a state lawsuit upon an employee's willingness to engage in protected activity." *See* Sum. J. Op. at 32. Neither of these references can be construed as adopting the *Bill Johnson's* standard for evaluating retaliatory litigation in the employment discrimination context.

contained on plaintiff's computer constituted retaliation for the employee's discrimination suit. *See* 823 F. Supp. 2d 166, 192 (E.D.N.Y. 2011).  Although the defendant argued that it had legitimate reasons for filing its counterclaim and pursuing sanctions, the court declined to grant summary judgment because, *inter alia*, "the timing of defendant's counterclaim and related demands on plaintiff . . . raised a triable issue of fact regarding whether defendant added its counterclaim with retaliatory intent."  *Id.* at 193.

Similarly, the court in *Mohamed v. Sanofi-Aventis Pharmaceuticals* also considered whether the counterclaims asserted by the defendants based on the plaintiff's breach of his tuition assistance contract were filed with retaliatory intent.  No. 06-CV-1504, 2009 WL 4975260, at *25 (S.D.N.Y. Dec. 22, 2009).  Although defendants' motion for summary judgment was granted, the Court reached that determination because the plaintiff failed to offer evidence showing that the "[d]efendants had the specific intent to interfere with [p]laintiff's protected rights."  *Id*.  For example, the court considered the fact that the company had sought tuition assistance reimbursement from other employees and had demanded repayment from plaintiff prior to the commencement of his discrimination lawsuit.  *Id*.  Notably, while the court also denied the plaintiff's motion for judgment as a matter of law on the allegedly retaliatory counterclaims, the court did not consider this fact in its analysis of the retaliation claim.  *Id*. at *25-26; *see also Nesselrotte v. Allegheny Energy, Inc.*, No. 06-CV-1390, 2009 WL 703395, at *14 (W.D. Pa. Mar. 16, 2009) (denying summary judgment on plaintiff's retaliation claim because, *inter alia*, the temporal proximity of the defendant's decision to sue plaintiff's husband's company raised an issue of fact); *Illiano*, 585 F. Supp. 2d at 352 (denying motion to dismiss claim based on retaliatory defamation suit where employer threatened to sue plaintiff if she sought to vindicate her rights); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447,

18

473 (S.D.N.Y. 2008) (holding in FLSA case that bad faith *or* groundless legal proceedings are actionable retaliation).

The Court acknowledges that unlike the case at bar, the cases above did not involve a fully litigated case that was found to be meritorious on one of multiple claims. What is noteworthy is that none of the cases utilize the *Bill Johnson's* standard, nor do they suggest that an employer's success on the merits of the claim will absolve the employer from liability under the anti-retaliation laws. Rather, following *Burlington Northern* (and consistent with *Spencer I*), the courts have conducted a fact-specific inquiry into the intent of the employer.

In support of their position, Defendants cite *Spiegel v. Schulmann*, 604 F.3d 72 (2nd Cir. 2010) which they argue is the "only relevant case in the Second Circuit." Defs.' Mem. at 9. *Spiegel*, however, is inapposite. In *Spiegel*, the Second Circuit affirmed the district court's decision to decline to enjoin an allegedly retaliatory state court lawsuit, finding that the plaintiffs' conclusory statements that the state lawsuit was patently frivolous were insufficient to warrant an injunction. 604 F.3d at 78-79. Although not specifically stated in the Second Circuit's *per curiam* decision, the standard for injunctive relief is more stringent than the standard for summary judgment on a retaliation claim – a party requesting injunctive relief must demonstrate irreparable harm and actual success on the merits. *See Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2012). Moreover, there are significant First Amendment concerns involved with enjoining litigation which are not as strong in a suit for damages. Significantly, *Bill Johnson's* recognized this reality, and as a result, established a different standard for pending and completed actions. *See White v. Lee*, 227 F.3d 1214, 1235 (9th Cir. 2000) (discussing two different standards). *Spiegel* also considered, without actually deciding, the effect of the All Writs and Anti-Injunction Acts, which prohibit a district court from granting an

19

injunction staying a state court proceeding except in limited circumstances, 604 F.3d at 78, a

concern not applicable here.  Finally, it is worth noting that the sole case cited by the Second

Circuit in *Spiegel* which dealt with retaliatory litigation, *EEOC v. Levi Strauss*, 515 F. Supp.

640, 644 (D.C. Ill. 1981), focused on the intent behind the filing of the litigation, not its merits.

The court held:

> [I]t cannot be concluded that all defamation actions in the wake of
> sexual harassment charges filed before the Commission are
> violations of Title VII. Rather, those suits initiated in state court in
> good faith and as an attempt to rehabilitate the employer's
> reputations which may have been tarnished by the charges are not
> necessarily violations of the Act.  In order to establish the
> propriety of an injunction, the Commission must demonstrate that
> the action was filed for improper, i.e. retaliatory, purposes. *EEOC
> v. Virginia Carolina Veneer Corp.*, 495 F.Supp. 775 (W.D.Va.
> 1980). In its complaint, the EEOC has alleged that Von Buskirk's
> action was filed for retaliatory purposes. That allegation, which
> must be proved at a hearing but which is taken as true here, is
> sufficient to defeat Von Buskirk's motion to dismiss.

*Id*. at 644.

The remainder of the cases cited by Defendants are all out-of-circuit and out-of-state

actions which are not binding on this Court and are, in any event, unpersuasive in this context.

For example, in *Hasan v. Foley & Lardner, LLP*, No. 04-CV-5690, 2007 WL 2225831, at *10

(N.D. Ill. Jul. 26, 2007), the court addressed whether the threat of a lawsuit was an adverse

employment action.  Whether or not the State Court Litigation is an adverse employment action

is not before this Court.  Moreover, the case relied on in *Hasan* for the proposition that a lawsuit

is not an adverse employment action was decided before *Burlington Northern.*  Pre-*Burlington

Northern* cases addressing this issue have been called into question in light of the expansive

definition of adverse employment action set forth in that case.  *See Mohamed*, 2009 WL

4975260, at *24 ("In the wake of *Burlington Northern*, there is now a 'substantial question' as to

the validity of precedent holding that a post-termination lawsuit or counterclaim may not be an adverse employment action.").

Defendants' reliance on *Beltran v. Brentwood North Healthcare Center, LLC*, 426 F. Supp. 2d 827, 835 (N.D. Ill. 2006), is also unavailing. *Beltran*, an FLSA case, was also dismissed on the grounds that the allegedly retaliatory action – the filing of a counterclaim – was not an adverse employment action. It is worth noting that the court explicitly distinguished the filing of a counterclaim from the situation where an employer files a separate lawsuit against the employee because "unlike initiating litigation against an employee, filing a counterclaim will not chill plaintiffs from exercising and enforcing their statutory rights because by the time the employer files its counterclaims, plaintiffs have already made their charges and initiated the lawsuit." *Id*. at 834.[4] While the court did address the plaintiff's argument that the retaliation claim should be sustained because the counterclaim was baseless, the court stated that it was merely assuming, without deciding, that the *Bill Johnsons's* standard applied. *Id*.

*Ergo v. International Merchant Services, Inc.*, 519 F. Supp. 2d 765 (N.D. Ill. 2007), also an FLSA case, involved the assertion of a compulsory counterclaim by the employer, as well as a separate lawsuit. Compulsory counterclaims are distinguishable from the filing of separate litigation or permissive counterclaims.[5] As to the separate lawsuit, the court applied the *Bill*

---

[4]      In recognizing the distinction drawn by the court in *Beltran*, this Court is not taking the position that a counterclaim can never be retaliatory.

[5]      The Court also notes that the foregoing cases, like the instant case, are different from retaliatory litigation cases under the FLSA involving compulsory counterclaims. In FLSA retaliation cases, courts have been more tolerant of an employer's filing of compulsory counterclaims and have found that such conduct cannot constitute retaliation unless the counterclaim is totally baseless. *See Torres*, 628 F. Supp. 2d at 474 ("[A] compulsory counterclaim is not actionable for retaliation unless it is totally baseless."); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07-CV-7350, 2008 WL 4865194 (S.D.N.Y. Oct. 31, 2008) (citing *Ergo v. International Merchance Servs., Inc.*, 519 F. Supp. 2d 765, 781 (N.D. Ill. 2007) ("[W]here an

*Johnson's* standard because it did not see any "principled distinction between [*Bill Johnson's*] and the facts presented here." 519 F. Supp. 2d at 781. For the reasons set forth above – that *Bill Johnson's* is aimed at a different public policy context, namely, NLRA cases and that *Burlington Northern* requires a more expansive interpretation of retaliation for employment discrimination cases – this Court respectfully disagrees with that particular finding in *Ergo*. *See Nesselrotte v. Allegheny Energy, Inc.*, No. 06-CV-1390, 2007 WL 3147038, at *12 n.25 (W.D. Pa. Oct. 25, 2007) (discussing *Ergo* and *Burlington Northern*). The Court also notes that *Hasan*, *Beltran*, and *Ergo* are all from the Seventh Circuit, which has adopted a unique presumption against finding litigation conduct to be retaliatory. *See* Bernstein, Adam J., *Retaliatory Litigation Conduct After* Burlington Northern & Santa Fe Railway Company v. White, 42 Colum. J.L. Soc. Probs. 91, 97-101, 108, 111 (2008).

Finally, *Bryant v. Military Department of Mississippi*, 597 F.3d 678 (5th Cir. 2010) did not involve a discrimination statute, but rather the prohibition on conspiracies to interfere with a federal officer's discharge of his duties under 42 U.S.C. § 1985(1). In any event, *Bryant* did not apply *Bill Johnson's*, but rather applied a similar test set forth in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries*, 508 U.S. 49, 57, 113 S.Ct. 1920 (1993). *Id*. at 692. Although the *Professional Real Estate Investors* test also looks to the merits of the underlying litigation, the approach in *Bryant* is noteworthy in that the court did not automatically assume that *Bill Johnson's* or *Professional Real Estate Investors* applied to the particular statute at issue, i.e. § 1985(1). The court does not address the state court cases cited by Defendants.

---

employer seeks to amend a pleading to assert a compulsory counterclaim to avoid the risk of being foreclosed from raising the claim in a subsequent action, that conduct cannot constitute retaliation, unless the counterclaim is 'totally baseless.'").

Applying the correct standard – which looks to whether retaliatory intent played a motive in the filing of the State Court litigation (*see Gordon,* 232 F.3d at 117) – the Court concludes that, notwithstanding the decision in the State Court Lawsuit, there are genuine issue of fact which preclude summary judgment.  Indeed, all of the issues of fact identified in *Spencer I* remain unresolved.  It is still unclear whether the high amount of damages Defendants sought in the State Court Lawsuit was designed to deter Plaintiff from pursuing his discrimination claims. Moreover, the "considerable amount of time between when the claims arose and when Defendants filed suit –almost two years" remains an issue (S.J. Op. at 32) as does the close proximity in time – less than two months – between Spencer's filing of a complaint with the DHR and the commencement of the State Court Lawsuit.  *See id.* at 28 n.4.  Halpern's testimony does not provide any clarification.  After discussing Spencer's general litigiousness, Halpern testified as follows:

Q:      How does that make you feel?

A:      It's just a problem I have to deal with.

Q:      How do you deal with it?

A:      Try to make it go away.

Q:      How do you make it go away?

A:      You are talking about now?

Q:      Any time.  Yes. [Objection]

A:      I just want him off my plate.

Q:      How do you do that?

A:      Well, coming to this deposition, I am telling you what happened.  We hire attorneys and they represent us and we hope that they bring out all the facts of the case and that

23

>one day a Judge will take a look at everything and say, you
>know, something; International Shoppes was wrong and
>not Mr. Spencer.
>
>Q:    Is that why you filed a lawsuit?
>
>A:    Obviously, yes.  Because the company was harmed
>financially.

Famighetti Cert., Ex. 3 at 63-64.  Moreover, the Court notes that Defendants failed to present

any evidence of their compensatory damages in the State Court Lawsuit.  DE 169.  This factor

leaves open the question whether Defendants *were* actually harmed by Spencer's allegedly

defamatory statements and whether the litigation was motivated by retaliatory animus.

### B.    Even if the Standard Urged by Defendants was Correct, Summary Judgment is Still Inappropriate

Even if the Court were to adopt Defendants' argument – that the filing of a meritorious

lawsuit is lawful, even if the suit was commenced with a retaliatory motive – the Court would

still deny summary judgment.  As noted, Defendants filed multiple claims in the State Court

Litigation.  The original complaint asserted seven causes of action (*see* Famighetti Cert., Ex. 13),

and the amended complaint asserted eight causes of action, although the state court found one of

them to be procedurally defective, *see* St. Ct. Trial Order at 4.

The Court points out that the only cause of action found to be meritorious, the sixth cause

of action, pertained solely to Defendant Halpern.  *See id*. at 5-6.  As such, ISI had no meritorious

claims and Halpern's successful litigation of the sixth cause of action has no bearing on whether

ISI's claims were retaliatory.[6]

---

[6]    Although the claim alleged  only defamation *per se* against Halpern, it is unclear to the
Court whether the claim was brought in the name of both Halpern and ISI.  The amended
complaint is not part of the record before the Court, and while Justice Lally referred to the plural
"plaintiffs" in discussing the sixth cause of action in the trial order (*see* St. Ct. Trial Order at 5-
6), she referred to the singular "plaintiff" in her damages decision.  *See* DE 169.  Even if the

Moreover, Defendants ignore the fact that they were not successful on seven of their eight claims. Indeed, based on the reasoning of Justice Lally, any one of these claims could have been dismissed on summary judgment, which is the standard *Bill Johnson's* established for determining whether a claim had a "reasonable basis." *See* 461 U.S. at 744-46. As to the second cause of action, the state court held that a reasonable listener would have found that the statement at issue was an opinion as opposed to a fact. *See* St. Ct. Trial Order at 3-4. The third, sixth, and seventh defamation *per se* causes of action were dismissed because they were substantially true. The state court reached this conclusion based on the *undisputed* fact that a managerial employee of ISI was carrying out a phantom employee scheme. *Id.* at 5-7. As to the fourth cause of action for fraudulent concealment, the claim was dismissed because Defendants' offered no evidence to support their conclusory accusation that Spencer had knowledge of the fraud. *Id.* at 5-6. Finally, the eighth cause of action was dismissed because the claim of being ostracized or singled out did not rise to the level of defamation *per se* and because a reasonable person would not understand the claim of harassment to be referring to a crime. *Id*. at 7-8.

Finally, the Court notes that the successful claim, the sixth cause of action, was not asserted in the original complaint filed. Thus, Defendants' success on that claim has no bearing on whether the original complaint filed in the State Court Lawsuit was retaliatory. The original complaint also contained claims based on Spencer's alleged filing of a false harassment claim and threat of groundless legal action. *See* State Ct. Complaint at 9-10, Famighetti Cert., Ex. 14. These claims raise special concerns about whether Defendants were seeking to dissuade Spencer

---

claim were technically brought in the name of ISI and Halpern, the Court is unaware of any basis on which ISI could assert a claim for defamation *per se* on behalf of Halpern.

from pursuing his discrimination complaint since they sought to impose liability upon him for that very decision. *See Burlington Northern*, 548 U.S. at 68.

Based on the foregoing information, even assuming Defendants cannot be held liable for pursuing the sixth cause of action, the outcome of that claim does not affect Defendants' liability for the other six causes of action. Spencer was forced to defend against all of the claims and faced the prospect of a large potential damage award. Although the Court does not have a copy of the amended complaint filed in the State Court Lawsuit, the original complaint sought either $50,000 or $1,000,000 for each cause of action. *See* Famighetti Cert., Ex. 14. Because defendants do not address whether it is possible to separate out the potential harm caused by the six failed claims from the one successful claim, it would be inappropriate to grant summary judgment on that portion of the claim. Thus, even when the standard urged by Defendants is applied, summary judgment is not warranted.

**V.    CONCLUSION**

For the foregoing reasons, the Court DENIES Defendants' motion for summary judgment on Plaintiff's retaliatory commencement of litigation claims brought pursuant to Title VII, NYHRL, and § 1981.

This matter is set for a Pre-Trial Conference on October 23, 2012 at 1:30 p.m.


                                                    **SO ORDERED.**

Dated:  Central Islip, New York
            September 28, 2012

                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge

26